**Charles Michael WHITMIRE, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–04–00825–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 10, 2006.

Roland B. Moore III, Houston, for appellant.

Carmen Castillo Mitchell, Houston, for appellee.

Panel consists of Justices FOWLER, FROST, and GUZMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

We withdraw our opinion of November 17, 2005, and issue this substitute opinion.

A jury convicted appellant of capital murder and the court imposed an automat-ic life sentence. On appeal, appellant raises six points of error. In his first and second, he challenges the legal and factual sufficiency of the evidence. In the third, he challenges the admissibility of his writ-ten confession. In his fourth, he chal-lenges the admissibility of evidence relat-ing to a potential homosexual relationship. In the fifth, appellant raises a due process challenge to the State's use of mutually inconsistent theories in separate trials of accused co-conspirators. Finally, appel-lant challenges the introduction of certain photographs of the complainant.

## Factual and Procedural Background

On September 22, 2002, appellant, Charles Michael Whitmire, went to 5431 Firefly in Houston, Texas with two other men, Richard Trent Schneider and Jason Leon Ray. According to appellant's con-fession, the three went there to rob Jason "Jay" Turner of his drugs and money. While they were there, Turner was fatally shot once in the head.

Turner lived with his girlfriend, Rox-anne Ochoa, in one bedroom of the Firefly house. Several others also resided in the Firefly house, including "Sammy Jr." Ap-pellant also had resided in the house. He and Turner had disagreements over appel-lant's alleged taking of toilet paper and unauthorized use of Turner's car. As a result of these arguments, appellant moved out.

Before the murder, appellant asked Schneider and Ray to go with him to the Firefly house. He met the two through his sister. In his confession, appellant ad-mitted to planning the robbery. Appel-lant, Schneider and Ray went to the Firef-ly house and left after waiting for Turner to return. While driving away, they saw Turner, exchanged greetings with him, and returned to the house. When they re-

entered the house, Ray grabbed Ochoa, held a knife to her head, and either Schneider or appellant shot Turner between the eyes. The three neither demanded nor took any property and promptly left the scene.

When the police questioned appellant about Turner's murder, he confessed only to planning the robbery; in a separate interview with police, Schneider confessed to being the shooter. Ultimately, appellant was indicted and tried for the capital murder of Turner. The jury heard testimony that appellant was the shooter. Receiving instruction on principal, party and conspirator liability, the jury convicted appellant of capital murder. The court imposed a life sentence.

## Analysis

### I. Legal Sufficiency

■ In his first point of error, appellant alleges the evidence was legally insufficient to sustain his conviction. In a legal-sufficiency challenge, we employ the familiar standard of viewing the evidence in the light most favorable to the verdict. *King v. State,* 29 S.W.3d 556, 562 (Tex. Crim.App.2000) (en banc). If any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, we will affirm. *Id.*

■ The court below instructed the jury it could convict appellant of capital murder on any of three bases: (1) as the principal shooter; (2) as a party to the offense; or (3) under conspirator liability. The jury returned a general verdict of guilt for capital murder. We will affirm if the evidence is sufficient to support the verdict on any of the bases. *See Rabbani v. State,* 847 S.W.2d 555, 558 (Tex.Crim.App.1992) (en banc).

Section 19.03 of the Penal Code makes it a capital offense to intentionally commit murder while in the course of a robbery or attempted robbery. Tex. Pen.Code § 19.03(a)(2). Even if a defendant does not commit murder himself, he may be found guilty as a party to the crime if he acts with the intent to promote or assist in the commission of the murder. Tex. Pen. Code § 7.02(a)(2). He also may be liable as a conspirator if there was a conspiracy to commit a robbery and a co-conspirator committed a reasonably foreseeable murder in furtherance of the conspiracy. Tex. Pen.Code § 7.02(b).

■ Appellant argues the jury could not convict because he was not the shooter, he had no intent to kill Turner, he had no idea Schneider was armed, and thus he did not know Schneider would kill Turner. The State need not prove beyond a reasonable doubt that appellant was the shooter when the jury receives instruction on party or conspirator liability. *See Rabbani,* 847 S.W.2d at 558; *Hernandez v. State,* 171 S.W.3d 347, 353 (Tex.App.-Houston [14 Dist.], 2005 no pet. h.). Neither is it necessary to prove intent, only that the murder was foreseeable. Tex. Pen.Code § 7.02(b).

■ According to appellant's confession, he planned to rob Turner with Schneider and Ray's help. He enlisted the help of two armed men to rob a potentially-armed drug dealer. He and his co-conspirators returned to the house when they saw Turner return to the house, indicating Turner was the true reason for their trip. While at the Firefly house, appellant did not attempt to stop the confrontation. Appellant made no attempt to render aid to Turner and never reported a crime. Viewed in the light most favorable to the verdict, there is ample evidence to support the conviction, even if appellant did not intend to kill Turner and even if he did not actually shoot Turner. It is perfectly fore-

seeable that a murder would result from an armed confrontation such as this one. The evidence is legally sufficient to support the conviction and accordingly we overrule appellant's first point of error.

## II. Factual Sufficiency

 Appellant also raises the issue of factual sufficiency. When conducting a factual sufficiency review, we view the evidence in a neutral light and will set the verdict aside only if the evidence is so weak as to make the verdict clearly wrong and manifestly unjust, or if the contrary evidence is so strong that the standard of proof, beyond a reasonable doubt, could not have been met. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim.App.2004), *cert. denied*, 544 U.S. 950, 125 S.Ct. 1697, 161 L.Ed.2d 528 (2005). Again, we will affirm if the evidence is sufficient to support the verdict on any of the bases upon which the jury received instruction. *See Rabbani* 847 S.W.2d at 558. While we have reviewed the entire record and have considered all evidence presented at trial, we cannot re-weigh the evidence and supplant the role of the jury to resolve conflicts in testimony and evaluate witness credibility. *See Swearingen v. State*, 101 S.W.3d 89, 97 (Tex.Crim.App.2003); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The evidence is factually sufficient as well.

At trial, appellant testified on his own behalf and contested the State's theory that he planned the robbery and thus could be criminally liable as a conspirator. Appellant testified that he had no intention of robbing, much less murdering Turner. Rather, completely disavowing his confession, he claimed he simply needed a ride to the Firefly house in order to meet another occupant, Sammy Jr., concerning an unfinished tattoo for one of appellant's acquaintances. According to appellant, his sister introduced him to Schneider and Ray the day of the murder and they agreed to give him a ride. Also, he testified that the two must have planned the robbery independently while he slept in the car because Schneider and Ray were friends. Appellant further testified that he had no idea that either Schneider or Ray were armed. Based on this testimony, appellant argues the evidence showed he did not devise the plan to rob Turner, and played no role whatsoever in killing Turner. Instead, he simply needed a ride to meet Sammy Jr. while Schneider and Ray used the opportunity for their own purposes. Yet, merely offering an alternate theory does not mandate the jury accept it.

 The jury may reject some or all of a witness's testimony. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App.2000) (en banc). When presented with an issue of witness credibility, we do not sit as jurors deciding which witnesses to believe; that is the jury's domain.

 Having reviewed all the evidence, we do not find the evidence too weak to support a jury verdict for capital murder based on conspiracy. We overrule appellant's second point of error.

## III. Admissibility of Written Confession

 In his third point of error, appellant contends his confession was involuntary due to lack of sleep and thus the court erred by admitting it into evidence. When a defendant makes a pretrial challenge to the voluntariness and admissibility of his confession, the prosecution bears the burden of proving voluntariness by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 486, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim.App.1995) (en banc). The court, outside the presence of the jury, must conduct a hearing to

determine for itself whether the statement was voluntarily given. TEX.CODE CRIM. PROC. art. 38.22 section 6; *see Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (establishing the procedure for the voluntariness hearing). Voluntariness is determined considering the totality of the circumstances. *Creager v. State,* 952 S.W.2d 852, 855 (Tex.Crim.App. 1997) (en banc). We do not disturb the court's ruling unless there is a clear abuse of discretion. *Alvarado,* 912 S.W.2d at 211. When, as here, the determination revolves around historical facts and witness credibility, we give the court almost total deference. *State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App.2000) (en banc) (citing *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997) (en banc)).

Appellant argued below that he had been under the influence of ephedrine before police took him to jail. As a result, he claimed to have had no sleep for twenty-four hours prior to giving his statement. Because of this alleged lack of sleep, appellant contends his statement was not truly voluntary. His own actions at the jail and trial testimony belie that assertion.

■■■■ The trial court heard testimony that appellant appeared coherent and awake during questioning. He received all of his warnings and the police treated him with courtesy and respect. When appellant asked for food and drink, they gave it to him. He did not, however, ask to sleep and there is no indication in the record that the police purposefully sought to take advantage of any fatigue. On the contrary, appellant and Sergeant Bozeman both testified appellant was asleep when retrieved for questioning. Even in his tri-

al testimony, appellant testified he slept at his sister's motel room in the twenty-four hours before the questioning. Considering this evidence and evaluating the competing stories, the court below was justified in finding the confession voluntary and not tainted by lack of sleep.

Even had the court below believed appellant had been sleep deprived, such deprivation would not be enough to warrant suppression. *See Barney v. State,* 698 S.W.2d 114, 121 (Tex.Crim.App.1985) (en banc) (holding that lack of sleep for sixteen hours will not, by itself, render a confession involuntary). The evaluation is of the totality of the circumstances. *Creager,* 952 S.W.2d at 855. Here, lack of sleep alone is simply not a factor to outweigh all others. We cannot say that the court abused its discretion in refusing to suppress the confession. We overrule appellant's third point of error.

## IV. Evidence of Homosexual Relationship

■■■■ Appellant's fourth point of error challenges questioning regarding whether or not appellant offered to perform sexual favors on Turner in exchange for forgiveness of a drug debt. According to appellant, the prosecutor engaged in misconduct [1] by violating the motion in limine when he asked the question about alleged sexual favors, and the trial court committed reversible error when it overruled the objection. We review the admission of evidence for abuse of discretion. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g) (en banc). So long as the court's decision was within the zone of reasonable disagree-

---

1. Appellant raises alleged prosecutorial misconduct as only a factor to consider in our weighing of prejudice, but we do not read his briefs as raising a separate point of error on the basis of alleged prosecutorial misconduct. Additionally, appellant cites no authority for the proposition that prosecutorial misconduct is a factor when considering a Rule 403 challenge.

ment, we will not disturb it on appeal. *Id.* Because we are reluctant to reverse an exercise of discretion, we will uphold it if there is any basis to sustain the court's ruling, even if not the basis upon which the court relied. *See Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990) (en banc) (citations omitted).

At trial, appellant raised two objections and he repeats those here. First, he argues that the testimony is inadmissible character evidence under Texas Rule of Evidence 404(b). Second, he argues that the testimony was more prejudicial than probative so as to violate Texas Rule of Evidence 403. We disagree.

Rule 404(b) prohibits the admission of "other crimes, wrongs or acts ... to prove the character of a person in order to show action in conformity therewith...." Rule 404(b) also lists several exceptions to the general prohibition of character evidence. While appellant correctly cites *Bishop v. State* as classifying sexual relations of this sort as an "act" under the rule, he cannot satisfy the rest of the rule. 869 S.W.2d 342, 345 (Tex.Crim.App.1993) (en banc). The evidence must both describe an "act" *and* be for the purpose of showing the defendant acted in conformity with that prior act. If not shown to be character evidence as described in the rule, then the evidence is not presumptively excluded.

■ Appellant did not below, and does not on appeal, explain how the evidence served to show some sort of "action in conformity therewith." Stated differently, there is no indication that the State meant for the jury to understand that appellant's possible offer of sexual favors meant that he acted in conformity with that behavior. Rather, it was offered and admitted to impeach appellant's testimony regarding his relationship with Turner, the deceased complainant. We have reviewed the trial objection and the briefing and conclude that this is not character evidence falling under Rule 404(b) because it was not offered to show conformity.

■ However, the objection under Rule 403 merits greater discussion. Texas courts have held that evidence of sexual behavior outside of what society deems acceptable is inherently inflammatory. *See Bishop,* 869 S.W.2d at 346. For evidence to be admitted, it first must be relevant. *See* Tex.R. Evid. 401, 402. Here, appellant does not argue that the evidence was irrelevant. *See* Tex.Code Crim. Proc. art. 38.36(a) (allowing evidence of the previous relationship between defendant and deceased in a murder trial). Rather, he focuses on the potential for prejudice as discussed in Rule 403. Thus, our analysis concerns whether that relevant evidence nonetheless should have been excluded because the potential for prejudice *substantially* outweighed its probative value. We start from the presumption that the probative value outweighs prejudicial effect. *Montgomery,* 810 S.W.2d at 389.

■ Appellant relies heavily on *Bishop* and *Blakeney v. State,* 911 S.W.2d 508 (Tex.App.-Austin 1995, no pet.). Those cases determined that admitting certain evidence of sexual practices and proclivities was not only error, but also harmful. *Bishop,* 869 S.W.2d at 346–47; *Blakeney,* 911 S.W.2d at 516–17. Both are distinguishable. Both of those cases involved sexual assault crimes, not capital murder as we have here. In *Bishop,* the court determined that evidence of previous sexual conduct was unnecessary given the other evidence tying the defendant to the crime. 869 S.W.2d at 346. In *Blakeney,* the court of appeals reversed because evidence of the defendant's homosexuality was irrelevant and served no purpose other than to suggest that all homosexuals

molest young boys. 911 S.W.2d at 515. Both *Bishop* and *Blakeney* involved valid challenges under Rule 404(b) because the prosecution admitted evidence of sexual practices to show that the defendants likely acted in conformity with their sexual histories and preferences.[2] Further, both cases' holdings rested squarely on Rule 404(b) violations, not Rule 403. Neither is persuasive on the facts of this case because the evidence in question, which included evidence of appellant's alleged sexual preference, was not admitted to show that he acted in conformity with that preference.

This case involves capital murder, not sexual assault. As discussed already, there is no hint that the evidence came in to show appellant acted in conformity with any homosexual characteristic. Rather, the judge ruled the evidence admissible on the basis of impeachment. Even if that were not a correct ruling, the evidence certainly could come in to show the relationship between appellant and decedent. *See* TEX.CODE CRIM. PROC. art. 38.36(a) (allowing in evidence as to all relevant facts of the previous relationship of the accused and deceased in a murder trial). We cannot say it was unnecessary as in *Bishop*. While the prosecutor's violation of the motion in limine may have been poor form, prosecutorial misconduct is not raised. Further, the exchange involved only one question regarding the possible exchange of sexual favors for forgiveness of a drug debt. Appellant flatly denied the allegation, and the cross-examination continued on other matters. The prosecutor did not dwell on the allegation in his questioning or closing argument. Appellant denied any ongoing problems in his relationship with Turner. We cannot say the prejudice outweighed the probative value of the impeachment evidence or exploring the true nature of appellant and Turner's relationship.

Because we find no merit in appellant's Rule 404(b) challenge and he cannot overcome the presumption of admissibility under Rule 403, we overrule appellant's fourth point of error.

## V. Due Process

■ In his fifth point of error, appellant urges this Court to reconsider its precedent and hold that a prosecutor violates a defendant's Due Process rights[3] when she argues mutually inconsistent theories of guilt in separate trials of co-conspirators. Basing his argument on one necessarily related to collateral estoppel, appellant argues it is "fundamentally unfair" to convict two men of being the shooter of only one fatal shot. *See generally Smith v. Groose*, 205 F.3d 1045, 1051 (8th Cir.2000) (holding that arguing factually contradictory theories to get multiple convictions is fundamentally unfair and a denial of due process); *contra Nichols v. Scott*, 69 F.3d 1255, 1270 (5th Cir.1995) (declining to apply collateral estoppel to criminal prosecutions of different defendants). However, this argument is waived.

■ To preserve error for appeal of alleged improper jury argument, a party must both object and pursue that objection to an adverse ruling. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996) (en banc). If the judge refuses to rule on the objection, then an appellant may still preserve error by objecting to the refusal.

---

**2.** *Blakeney* is not binding upon this Court, and while we acknowledge that the challenge raised in that case fell under the general purview of Rule 404(b), we express no opinion as to the correctness of that decision.

**3.** Although appellant references both the United States and Texas Constitutions' protection of due process on appeal, he made no specific reference at trial as to which supported his claim.

Tex.R.App. P. 33.1(a)(2)(B); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex.Crim.App. 2003). Here, appellant objected to the jury argument, but did not pursue that to an adverse ruling. He made his objection and the judge ordered trial counsel to "sit down" and said that he could put the objection on the record later. Appellant did not object to the court's failure to rule, and though he did make the due process objection later, he did so only after the jury had retired and the judge could not cure any alleged error. That is not enough to preserve error. Appellant either must secure an adverse ruling at a time when the judge may correct the problem by issuing an instruction to disregard, or must object to the judge's refusal to rule on the objection. Without an adverse ruling or an objection to the judge's refusal to rule, there is no error preserved for our review. *Cockrell*, 933 S.W.2d at 89.

## VI. Photographic Evidence

 In a final point of error, appellant argues that the court erroneously entered a photograph into evidence over objection that it is grisly, gruesome, and is repetitive of another photograph. Again, the standard for reviewing the court's admission of this evidence over a Rule 403 objection is abuse of discretion. If the decision to admit was within the zone of reasonable disagreement, we will not reverse. The Court of Criminal Appeals has laid out several factors, though not exclusive, to consider when evaluating photographic evidence of this sort. *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex.Crim.App. 1992) (en banc) (citing *Long v. State*, 823 S.W.2d 259, 272 (Tex.Crim.App.1991) (en banc)). A court is to consider gruesomeness, detail, size, whether in color or black and white, whether close-up, and whether the body is naked or clothed. So long as the court concludes the evidence is relevant and the jury will not resolve issues on an inappropriate emotional basis, the evidence is admissible. *Id.*

 The photograph is of Turner's head after the shooting. It is a close-up of the face showing the bullet entry. After reviewing the record, we find no actual reference to the photograph in testimony, though the court admitted it. Recalling that we presume probative value to outweigh any prejudicial effect, *Montgomery*, 810 S.W.2d at 389, we cannot say the picture inflamed the jurors to convict on an irrational basis. The factors do not weigh in favor of appellant's argument. From what we can tell, it was not enlarged or changed in any way. Though it is in color and shows the entry wound, the photograph is not gory or gruesome. The evidence was relevant and certainly could have aided the jury in understanding the testimony regarding the wound and complainant's death. Additionally, given that it appears to have been ignored during testimony, we cannot understand how it was repetitive or could have caused unfair prejudice. The prosecutor evidently did not refer to the picture even in his closing. Neither did the prosecutor use it in an inappropriate way. Appellant's sixth point of error is overruled.

## Conclusion

We overrule each of appellant's issues and affirm the trial court's judgment.