Opinion issued December 20, 2007











In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00357-CR




JUAN MANUEL CHAVEZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 639093




MEMORANDUM OPINION
          A jury convicted appellant, Juan Manuel Chavez, of two counts of aggravated
sexual assault and assessed punishment at 35 years in prison. In 1994, this Court
affirmed appellant’s conviction, holding that the evidence was sufficient to support
it. See Chavez v. State, No. 01-93-00350-CR, 1994 WL 27344, *1 (Tex.
App.—Houston [1st Dist.] Feb. 3, 1994, no pet.) (not designated for publication). 
Appellant subsequently filed two motions for post-conviction forensic DNA testing. 
See Tex. Code Crim. Proc. Ann. arts. 64.01–64.05 (Vernon 2006 & Supp. 2007). 
In the second motion, appellant asked the court to order mitochondrial DNA testing
on a strand of hair collected at the crime scene. The trial court denied appellant’s
motion. We determine whether the court abused its discretion in denying the motion. 
We affirm. 
Factual Background
          The facts in the underlying case were detailed in our 1994 opinion as follows:
On May 12, 1992, [complainant] walked from her apartment to the
grocery store to buy a money order. As she walked down the street, she
noticed a man walking in the same direction on the opposite side of the
street. When she got to the store, she purchased her money order and
some fruit. As she left the store, she again saw the man standing at the
corner of the parking lot. He approached [complainant] and started
talking to her. Although she asked him to leave her alone, he followed
her all the way home. He asked to carry her bag, and told her that she
could work in his brother’s bar because she had a “real nice butt.” He
asked her why she was playing hard to get, and accused her of being
“the same as all the rest.”
 
When they got to her apartment complex, the man followed
[complainant] up the stairs to her apartment and again tried to carry her
bag. [Complainant] entered her apartment and locked the door behind
her. She looked out the window and saw the man loitering by another
apartment. She put the fruit in the refrigerator and waited a few
minutes. When she looked out again, the man was gone. She took the
money order to the apartment complex office to pay her rent. She did
not lock the door to her apartment.
 
[Complainant] was gone only a few minutes. She returned to her
apartment and walked into the bedroom. The man who had followed her
emerged from the closet. [Complainant] tried to run, but the man
grabbed her, hit her, and threw her to the floor. He pulled a gun from
the waistband of his shorts, pointed it at her head, and told her to shut
up or he would blow her away. The man ripped off her clothes, and
forced her to perform oral sex on him. The man then forced
[complainant] into the bedroom, where he put his penis in her anus. 
After the assault, he cleaned himself, wiped the doorknobs with a towel,
and left.
 
[Complainant] did not immediately tell anyone about the rape. Later in
the day, she confided in a friend, who persuaded her to call the police.
She was examined at Ben Taub Hospital, and a police officer collected
evidence from her apartment.
 
About a month after the assault, the police asked [complainant] to
describe her assailant to a composite artist, who completed a sketch
based on [complainant]’s description. Her description included, among
other things, a thin scar on the man’s right cheek.
 
A few weeks after the rape, [complainant] and a friend were riding a bus
when [complainant] recognized one of the passengers as the man who
had assaulted her. When the bus stopped, the man quickly got off. On
July 19, 1992, [complainant] was shopping at the Fiesta Supermarket
when she recognized a shopper as the man who had raped her and who
she had seen on the bus. While her friend went to look for the police,
[complainant] told a store employee that the man had raped her. The
man was detained by the employee and arrested by the police. After he
was arrested, [complainant] collapsed. The following day,
[complainant] picked him out of a police lineup. The man arrested at
Fiesta and identified by [complainant] as the rapist was appellant.
 
At trial, [complainant] was unequivocal in her identification of appellant
as her assailant. She testified that she saw him clearly when he walked
beside her and when he assaulted her. She remembered the thin scar on
his cheek. She also testified he had a faded blue tattoo of a swastika on
his right wrist. Although appellant did not have a tattoo on his wrist at
the time of the trial, he did have a scar in the area where [complainant]
saw a tattoo. (The prosecutor argued that appellant might have had the
tattoo removed after the rape.) [Complainant] also described her
assailant as cleanshaven; a photograph of appellant, taken immediately
following his arrest (more than two months after the rape), depicts him
with a sparse moustache.
 
A police department chemist testified that she compared a strand of hair
taken from [complainant]’s apartment with head and pubic hair samples
taken from appellant, and found that the hair from the apartment was
consistent with appellant’s head hair sample.
 
Patricia Castilleja, appellant’s girlfriend, testified she spent the night of
May 11 with appellant and was with him the entire day on May 12;
Castilleja’s highly detailed testimony was corroborated by appellant and,
in part, by Jorge Echeverria, appellant’s roommate.
 
Chavez, 1994 WL 27344 at *1–2.
Preservation
          On March 8, 2006, appellant requested that the trial court order post-conviction
mitochondrial DNA testing on the strand of hair that formed the basis of the police
department chemist’s testimony.


 In its response, the State argued that the DNA
testing that appellant sought on the hair strand could not exonerate appellant because,
even if the test showed that the hair came from someone other than appellant, that
showing would not establish his innocence. The court found that appellant failed (1)
to show by a preponderance of the evidence that he would not have been prosecuted
or convicted if exculpatory DNA test results had been obtained through DNA testing
of the hair and (2) to carry his burden of proof under section 64.03(a)(2). See Tex.
Code Crim. Proc. Ann. art. 64.03(a)(2) (Vernon Supp. 2007). The court denied
appellant’s motion. 
          In one issue, appellant asserts that the trial court erred in denying his motion
for forensic DNA testing on the basis that appellant did not prove that the assailant
was the source of the hair because the State argued at trial that the hair strand did
prove appellant was the assailant and, therefore, the State should be judicially
estopped from arguing otherwise. The State contends that appellant failed to preserve
this issue for review because appellant failed to obtain a reporter’s record of the
DNA-request proceedings in the trial court and the clerk’s record fails to show that
appellant raised an objection on the basis of judicial estoppel. Appellant argues in
a reply brief that he requested a hearing, which the State opposed and the trial court
denied. However, appellant fails to cite the record in support of these assertions.
           Texas Rule of Appellate Procedure 33.1 provides, in relevant part, that as a
prerequisite to presenting a complaint for appellate review, the record must show that
the complaint was made to the trial court by a timely request, objection, or motion
that states the specific grounds for the desired ruling, if such grounds are not apparent
from the context of the request, objection, or motion. Tex. R. App. P. 33.1; Murphy
v. State, 200 S.W.3d 753, 758 (Tex. App.—Texarkana 2006) (holding that appellant
failed to cite any cases or advance any arguments to trial court concerning common-law collateral estoppel and, therefore, failed to preserve issue for appellate review),
aff’d, No. PD-1297-06, 2007 WL 3276328 (Tex. Crim. App. Nov. 7, 2007); West v.
State, 121 S.W.3d 95, 114 (Tex. App.—Fort Worth 2003, pet. ref’d). Further, the
trial court must have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court’s refusal to
rule. West, 121 S.W.3d at 114. Constitutional rights may generally be waived if the
proper request, objection, or motion is not asserted in the trial court. Curry v. State,
186 S.W.3d 39, 42 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding that
appellant waived due process challenge respecting article 64.03 by failing to assert
such challenge in trial court) (citing Briggs v. State, 789 S.W.2d 918, 924 (Tex. Crim.
App. 1990) (holding that even constitutional error may be waived)). 
          The record does not reflect that appellant sought a hearing or objected to the
trial court’s failure to conduct one on the record. Nor does the record reflect an
objection that the State violated the common law doctrine of judicial estoppel.


 See
Murphy, 200 S.W.3d at 758; Whitmire v. State, 183 S.W.3d 522, 530–31 (Tex.
App.—Houston [14th Dist.] 2006, no pet.). Thus, we limit our review to whether the
court erred in denying appellant’s motion for DNA testing.
The Standard of Review
          We apply the bifurcated standard of review to a trial court’s decision to deny
post-conviction DNA testing. Bates v. State, 177 S.W.3d 451, 453 (Tex.
App.—Houston [1st Dist.] 2005, pet. ref’d) (citing Rivera v. State, 89 S.W.3d 55, 59
(Tex. Crim. App. 2002)). Accordingly, we afford almost total deference to the trial
court’s determination of issues of historical fact and its application-of-the-law-to-fact
issues that turn on an evaluation of credibility and demeanor. Id. We review de novo
other application-of-law-to-fact issues, including the ultimate question of whether the
trial court was required to grant the motion for DNA testing under Chapter 64 of the
Code of Criminal Procedure. Id.
Governing Law
          Chapter 64 of the Code of Criminal Procedure was created in 2001. See Act
of Apr. 5, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Laws 2, 2–4. This
Chapter governs a convicted person’s right to forensic DNA testing, and article
64.03(a) of this chapter governs when a court may order such testing. See Tex. Code
Crim. Proc. Ann. art. 64.03(a) (Vernon Supp. 2007). Article 64.03 was amended in
2003 and 2007. See Act of Apr. 25, 2003, 78th Leg., R.S., ch. 13, § 3, 2003 Tex. Gen
Laws 16; Act of May 24, 2007, 80th Leg., R.S., ch. 1006, § 4, 2007 Tex. Gen. Laws
Serv. 3529, 3530. The 2003 amended version of the statute governs all motions
submitted by a convicted person on or after the effective date of September 1, 2003.


 
Act of Apr. 25, 2003, 78th Leg., R.S., ch. 13, § 8–9, 2003 Tex. Gen Laws 16, 17. 
Appellant filed his motion in 2006. Thus, the 2003 version of the statute governs the
disposition of appellant’s motion.
          The 2003 version of article 64.03 of the Code of Criminal Procedure states, in
pertinent part, as follows:
(a) A convicting court may order forensic DNA testing under this
chapter only if:
(1) the court finds that:
(A) the evidence:
(i) still exists and is in a condition making DNA testing possible;
and
(ii) has been subjected to a chain of custody sufficient to establish
that it has not been substituted, tampered with, replaced, or
altered in any material respect; and
(B) identity was or is an issue in the case; and
(2) the convicted person establishes by a preponderance of the
evidence that:
(A) the person would not have been convicted if exculpatory
results had been obtained through DNA testing; and
(B) the request for the proposed DNA testing is not made to
unreasonably delay the execution of sentence or administration of
justice.
. . . 
(c) If the convicting court finds in the affirmative the issues listed in
Subsection (a)(1) and the convicted person meets the requirements of
Subsection (a)(2), the court shall order that the requested forensic DNA
testing be conducted. 
 
Tex. Code Crim. Proc. Ann. art. 64.03(a), (c) (Vernon Supp. 2007). 
          “Before a trial court can order post-conviction DNA testing, the convicted
person must meet the requirements of article 64.03 of the Code of Criminal
Procedure.” Bates, 177 S.W.3d at 453. That is to say that an appellant is required
to establish by a preponderance of the evidence that he would not have been
convicted if DNA evidence turned out to be favorable to him. The trial court
determined, and we see no error in that determination, that appellant failed to show
that, had the test excluded him as the donor, he would not have been convicted. See
Ard v. State, 191 S.W.3d 342, 347 (Tex. App.—Waco 2007, pet. ref’d). Therefore,
we hold that the trial court did not err in determining that appellant failed to meet the
requirements of article 64.03(a)(2).


 
 
 
 
 
 
Conclusion
          We affirm the order of the trial court.
 
                                                                        Tim Taft
Justice
 
Panel consists of Justices Taft, Hanks, and Higley.
 
Do not publish. See Tex. R. App. P. 47.2(b).