

# NUMBER 13-07-00752-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

BRENT ANDERSON,                                                    Appellant,

v.

THE STATE OF TEXAS,                                               Appellee.

### On appeal from the 130th District Court
### of Matagorda County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Hill
### Memorandum Opinion by Justice Hill[1]

Appellant, Brent Anderson, appeals his conviction by a jury of the offense of capital

murder. *See* TEX. PENAL CODE ANN. § 19.03 (Vernon Supp. 2008). His punishment was

assessed by the trial court, in accordance with article 37.07 of the Texas Code of Criminal

---

[1] Retired Second Court of Appeals Justice John G. Hill assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (Vernon 2005).

Procedure, at life imprisonment in the Texas Department of Criminal Justice, Institutional Division, without parole.  *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 (Vernon Supp. 2008). In five issues, he contends that:  (1) the trial court erred by refusing to admit evidence of drug use by Kendall Owen, one of two victims, at the time of the alleged offense; (2) the trial court erred by permitting the State to demand that Anderson offer his opinion on the credibility of the State's witness; (3) the trial court erred by instructing the jury on his "provoking the difficulty"; (4) the trial court erred by failing to quash his indictment on the ground that the capital murder statute is unconstitutional as applied to him because it denied him the right to have the issue of sudden passion heard by the jury; and (5) the trial court erred by failing to quash his indictment on the ground that the capital murder statute is unconstitutional as applied to him because it denied him the right to present punishment mitigation evidence to the jury.  We affirm.[2]

## I. EVIDENCE OF DRUG USE

In his first issue, Anderson contends that the trial court erred by refusing to admit evidence of Kendall Owen's drug use at the time of the alleged offense.

### A.    Relevant Facts

Anderson went to the home of Owen's grandmother and shot Owen twice with a shotgun.  Although Anderson indicated that Owen had something in his hand that Anderson thought was a gun, there was no indication that Owen was armed or was threatening Anderson at the time of the shooting.  After shooting Owen, Anderson went inside the home and shot Tiffany Hansen.

Anderson sought to present evidence before the jury showing that a toxicology

---

[2] As this is a memorandum opinion, and the parties are familiar with the facts, we will not recite them except as necessary to explain the Court's decision and the basic reasons for it.  *See* TEX. R. APP. P. 47.4.

2

report indicated that Owen, after his death, tested positive for cocaine metabolites and Xanax metabolites, "Urine Cocaine metabolite, Benzodiazepines," and "Blood Benzoylecgonine." Dr. Stephen Pustilnik, the medical examiner for Galveston County, conducted the autopsies on Owen and Hansen on behalf of Matagorda County. Testifying outside the presence of the jury, he identified the aforementioned substances as being present in Owen's body. However, he testified that cocaine had no effect on Owen at the time of his death, because no cocaine was in his system at the time of his death. Dr. Pustilnik said the drugs found in Owen did not suggest any effect on Owen's mental state, state of mind, or his actions or reactions at or near the time of his death. Dr. Pustlinik indicated that Owen could have been using cocaine up to three days earlier. He related that the Xanax was only in Owen's urine, and was just "waiting to be excreted." Dr. Pustlinik concluded by saying that he could not say what effect, if any, the drugs might have had on Owen's relationship with anyone, especially Anderson.

The State objected to the admission of this evidence, based upon its contention that the evidence is more prejudicial than probative and not relevant to the facts of the offense. The trial court sustained the State's objection that the evidence is more prejudicial than probative. As we understand Anderson's contention, it is that this evidence is relevant to the issue of the previous relationship between him and Owen and to show the condition of Anderson's mind at the time of the offense, for the purpose of showing whether there was a real or apparent danger as viewed from his own standpoint.

## B.     Analysis

The trial court should be allowed the discretion to exclude or admit evidence before the jury, and an appellate court should not set aside the trial court's rulings absent a showing in the record that the trial court has abused that discretion, which means we

review whether the court's ruling was within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990); *Whitmire v. State*, 183 S.W.3d 522, 528-29 (Tex. App.–Houston [14th Dist.] 2006, pet. ref'd). We find that this evidence has no relevance to the issue of the previous relationship between Owen and Anderson, and no relevance to the condition of Anderson's mind at the time of the offense. Although Anderson suggests that the evidence supported his story of the events leading up to the fatal shootings, we hold that any probative value such evidence might have is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* TEX. R. EVID. 403.

In urging that the evidence was admissible, Anderson relies on the cases of *Booth v. State*, 679 S.W.2d 498, 502 (Tex. Crim. App. 1984) and *Eisenman v. State*, No. 13-05-705-CR, 2008 Tex. App. LEXIS 282 (Tex. App.–Corpus Christi January 10, 2008, pet. ref'd) (mem. op., not designated for publication), *cert. denied*, 129 S.Ct. 1015 (2009). However, *Booth* and *Eisenman* are inapposite to Anderson's contention. In both of these murder cases, the trial court excluded evidence of pornography which the defendant sought to introduce—books and magazines in *Booth*, and computer images in *Eisenman*. *Booth*, 679 S.W.2d at 502; *Eisenman*, 2008 Tex. App. LEXIS 282 at **34-35. In each case, the court upheld the trial court's decision to exclude the evidence. In *Booth*, the court held that the books and magazines played no role in the killing. *Booth*, 679 S.W.2d at 502. In *Eisenman*, the court held that there was no showing that the pornographic images on the victim's computer were related to the shooting, that they were the subject of the argument that preceded the shooting, or that they played any part whatsoever during the events leading up to the shooting. *Eisenman*, 2008 Tex. App. LEXIS 282 at **38-39.

4

In light of these cases, we conclude that the trial court did not abuse its decision in excluding the evidence of the substances found in Owen's body. We overrule issue one.

## II. ANDERSON'S OPINION TESTIMONY

In his second issue, Anderson argues that the trial court erred by permitting the State to demand that he give his opinion on the credibility of the State's witnesses.

### A.      Relevant Facts

Anderson testified that he did not see how two of the witnesses, Debra Beck and Ashley Love, could have seen how he shot Owen. He testified, without objection, that he did not think all of their testimony was truthful. When he was subsequently asked if they were lying, his counsel objected to the question on the basis that it was improper impeachment. The trial court overruled the objection. Anderson then testified, without further objection, that the witnesses were fabricating the truth, and lying about some of the things they said.

### B.      Analysis

The opinion of a witness as to the truth or falsity of other testimony may not be elicited. *Ayala v. State*, 352 S.W.2d 955, 956 (Tex. Crim. App. 1962). However, where, as here, the testimony of the witness and other witnesses is conflicting, and where, as here, testimony of the witness as to the truth or falsity of the other witnesses' testimony is admitted without objection, the defendant is not harmed. *See id.*; *see also Taylor v. State*, 774 S.W.2d 31, 35 (Tex. App.–Houston [14th Dist.] 1989, pet. ref'd).

In arguing that there was harmful error, Anderson relies on the opinion in *Good v. State*, 723 S.W.2d 734, 738 (Tex. Crim. App. 1986). We find that opinion to be

5

distinguishable because it involved an improper argument by the prosecution, not a situation such as the one at bar where the defendant testified the other witnesses were lying, at least in part, and where the jury could see by his testimony that he had a disagreement with the witnesses involved as evidenced by his other testimony. *Id. Good* was also not a case involving improper evidence that was previously and subsequently admitted without objection. We overrule issue two.

### III. INSTRUCTION ON THE DOCTRINE OF PROVOKING THE DIFFICULTY

In his third issue, Anderson insists that the trial court erred by including an instruction on the doctrine of provoking the difficulty. Our first duty in analyzing a jury charge issue is to decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005).

### A. Relevant Facts

Debra Beck, who identified herself as Owen's biological mother, testified that before the shooting, she saw and heard Owen in an angry telephone conversation with Anderson, involving Anderson beating up Tiffany. She said that Anderson told Owen to meet him in Bay City and that they were going to fight. She related that Owen agreed. According to Beck, as Owen was leaving to go meet Anderson, Anderson's truck was in her driveway. As Owen approached the truck, Anderson jumped out of the truck and shot Owen.

### B. Analysis

A trial court should charge a jury on provocation when there is sufficient evidence to raise the issues of whether: (1) the defendant did some act or used some words that provoked the attack on him; (2) such act or words were reasonably calculated to provoke

6

the attack; and (3) the act was done or the words used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other. *Smith v. State*, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998). We must determine if there is sufficient evidence from which a rational jury could have found provocation beyond a reasonable doubt, viewing the evidence in the light most favorable to giving the instruction. *Id.* We hold that, viewing the evidence in the light most favorable to giving the instruction, there is sufficient evidence from which a rational jury could have found provocation beyond a reasonable doubt. *See Rogers v. State*, 71 Tex. Crim. 271, 277-79 (1913).

Anderson refers us to Beck's testimony that Owen also suggested they meet for a fight. He also refers to various incidents between him and Owen and threats that he says Owen made. We hold that, despite the evidence to which Anderson refers, there is sufficient evidence to support the giving of the instruction.

Anderson relies on the unpublished case of *Shivers v. State*, No. 07-03-0521-CR, 2005 Tex. App. LEXIS 3204. **2-7 (Tex. App.–Amarillo April 26, 2005, pet. ref'd). However, *Shivers* is distinguishable. Shivers killed a drug dealer after a confrontation between them occurred. *Id.* at **2-4. Shivers was armed. *Id.* at *6. There was some evidence that after the drug dealer had "talked trash" and tried to sell Shivers fake drugs, Shivers had taken the dealer's jacket and wallet. *Id.* at *6. The court, while acknowledging that such acts could have provoked the victim to attack Shivers, held that it was error for the trial court to instruct on provoking the difficulty because there was no evidence that Shivers's conduct was for the purpose or intent of having a pretext for killing the victim. *Id.* at *7. In this case, the evidence reflects an ongoing feud between Anderson and Owen, with Anderson arming himself, going to the location where Owen was, urging him to meet

him at another location for a fight, then immediately shooting him with a shotgun as Owen was leaving to go to that location. We find that these facts more closely resemble the facts in *Rogers* than those in *Shivers*. *See Rogers*, 71 Tex. Crim. at 277-79. We overrule issue three.

## IV. FAILURE TO QUASH

### A. Right to Due Process and Equal Protection

In his fourth issue, Anderson asserts the trial court erred by failing to quash his indictment on the ground that the capital murder statute is unconstitutional as applied to him because it denied him the right to have the issue of sudden passion heard by the jury. He urges that this violates his right to due process and equal protection under the United States and Texas Constitutions. He frankly acknowledges that the Texas Court of Criminal Appeals has rejected such claims in *Wesbrook v. State*, 29 S.W.3d 103, 112-113 (Tex. Crim. App. 2000). He presents no federal authority contrary to *Wesbrook*. Relying on *Wesbrook*, we overrule issue four. *See id.* (providing that "no equal protection concerns are present" where the legislature "chose not to permit the defense of 'sudden passion' in the context of capital murder").

### B. Right to Present Punishment Mitigation Evidence

In his fifth issue, Anderson contends the trial court erred by failing to quash his indictment on the ground that the capital murder statute is unconstitutional as to him because it denied him the right to present punishment mitigation evidence to the jury. He contends that the mandatory sentence of life without parole upon conviction where the State does not seek the death penalty violates his right to due process and a fair trial,

8

pursuant to article I, sections 10 and 19 of the Texas Constitution, and Amendment Fourteen of the United States Constitution. As noted in our discussion of issue four, the *Wesbrook* court held that the mandatory sentence of life without parole upon conviction of capital murder where the death penalty is not assessed does not violate a defendant's right to due process. *Wesbrook*, 29 S.W.3d at 112-13.

Anderson also contends that the mandatory sentence of life without parole violates his rights under article I, section 13, of the Texas Constitution and the Eighth and Fourteenth Amendments to the United States Constitution, because it is arbitrary, capricious, and constitutes cruel and unusual punishment. A mandatory sentence of life without parole is not a cruel and unusual punishment prohibited by the Eighth Amendment of the United States Constitution, *Harmelin v. Michigan*, 501 U.S. 957, 996 (1991), nor does it violate the similar prohibition of article I, section 13 of the Texas Constitution, *Cienfuegos v. State*, 113 S.W.3d 481, 496 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd). We overrule issue five.

## V. CONCLUSION

Having overruled all of Anderson's issues, we affirm the trial court's judgment.

JOHN G. HILL
Justice

Do Not Publish. TEX. R. APP. P. 47.2(b)
Memorandum Opinion delivered and
filed this the 27th day of August, 2009.

9