

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00463-CR

JULIO ORTIZ CHAVARRIA                                                    APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

## FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1292614D

----------

## MEMORANDUM OPINION[1]

----------

A jury found Appellant Julio Ortiz Chavarria guilty of two counts of aggravated sexual assault of a child under fourteen and found in a special issue that the child was younger than six years of age. The jury subsequently assessed Appellant's punishment at imprisonment for life in the Institutional Division of the Texas Department of Criminal Justice. In one point, Appellant

---

[1]*See* Tex. R. App. P. 47.4.

argues that he was deprived of his constitutional right to present a meaningful defense when the trial court refused to let him present certain evidence. We overrule Appellant's point, correct the judgments' clerical errors, and, as corrected, affirm the judgments.

## Background

In the indictment, the State alleged two first-degree-felony offenses of aggravated sexual assault of a child under fourteen: that on or about August 18, 2011, Appellant intentionally or knowingly caused the anus of Complainant, a child younger than fourteen years of age, to contact his sexual organ and that he intentionally or knowingly caused her sexual organ to contact his sexual organ. *See* Tex. Penal Code Ann. §§ 22.021(a)(1)(B)(iii), (iv), (2)(B), (e) (West Supp. 2014)[2]; *see also id.* § 12.32 (West 2011) (stating that the punishment range for a first degree felony is confinement for life or for any term of not more than ninety-nine years or less than five years and a fine not to exceed $10,000).

The State included a special issue in the indictment, alleging that at the time the alleged offenses were committed, Complainant was a child younger than six years of age. If found true, this would make the minimum term of imprisonment twenty-five years. *Id.* § 22.021(f)(1).

---

[2]Other portions of section 22.021(a), not pertinent to this appeal, were amended effective September 1, 2011. Act of April 7, 2011, 82nd Leg., R.S., ch. 1, § 6.05, 2011 Tex. Sess. Law Serv. 1, 16 (West) (to be codified at Tex. Penal Code § 22.021(a)(2)(ii), (iii)).

The jury found Appellant guilty of both counts and found the special issue true. After hearing additional evidence during the punishment trial, the jury assessed Appellant's punishment at confinement for life on both counts. The two punishments run concurrently.

**The Evidence**

The prosecutor used dolls to help Complainant with her testimony. Complainant testified that Appellant touched her bottom with his pee-pee. Complainant said she knew the perpetrator's name but refused to say his name. She identified the perpetrator as her step-dad but again refused to identify him by name because she said she was scared. When broaching the second incident, Complainant was not able to talk about it. Complainant said the perpetrator gave her five dollars when he left for work.

Complainant's mother testified Appellant gave Complainant a five-dollar bill when he left the day after the alleged offense. She also said Complainant called Appellant "Dad" or "Daddy." Complainant's mother further testified that after Appellant left, Complainant told her that she felt Appellant put pressure on her bottom with his pee-pee. Complainant's mother said Complainant also described catching a glimpse of a blond girl with her legs spread open on Appellant's cell phone.

The sexual assault nurse said Complainant, as part of her history, told her that her dad, whom she also identified as "Julio," put his wiener in her bottom and

that it hurt a lot.  Complainant told the nurse that Appellant had been looking at naked people on his phone.

The forensic interviewer said Complainant was five years' old on August 19, 2011, when she interviewed her.  The forensic interviewer said she used anatomical dolls during the interview.  She said Complainant told her that her dad, Julio, put his wiener in her crotch and described her crotch as being the part where she peed from.

**Appellant's Complaint**

In a single point, Appellant contends the trial court abused its discretion by keeping out testimony that Complainant was interviewed by a Child Protective Services' investigator for possible physical or sexual abuse approximately ten days before the alleged offenses.  Appellant argues that it was this interview with the CPS investigator that gave Complainant the idea to accuse him of the alleged offenses.  Appellant contends that by excluding the testimony about the previous interview, the trial court deprived him of his fundamental right to present a meaningful defense under the Sixth Amendment of the United States Constitution and under Article I, Section Ten, of the Texas Constitution.

Outside the presence of the jury, Appellant said he wanted to present the testimony of an investigator with Child Protective Services who went to the home of Complainant's mother on August 9, 2011, to investigate leg injuries suffered by one of Complainant's mother's grandchildren.  The investigation did not directly involve either Complainant or Appellant.  As part of every investigation, the CPS

4

investigator said that she screened all children in the home for possible physical or sexual abuse, so she screened Complainant on August 9, 2011. The CPS investigator said she asked Complainant to identify her private parts and asked her whether anyone had ever touched her private parts, whether anyone had asked her to touch their private parts, and whether anyone had ever shown her any movies, books, or pictures of people with no clothes on. After the interview, the CPS investigator said she had no suspicion of any physical or sexual abuse of Complainant. She said Complainant denied any abuse. The CPS investigator said she returned on August 19, 2011, and at that time Complainant made an outcry.

The State initially objected to the testimony because anything the Complainant told the CPS investigator was hearsay and because there was no basis for using it as impeachment evidence. After hearing the CPS investigator's proposed testimony, the State also argued it was not relevant and would be "distracting to the jury."

Appellant argued it was admissible, stating, "[I]t goes to this child's credibility[. W]here do you get the idea, how does a child come up with that, why would she come in here and tell this story later on. It plants the seed." Regarding the State's hearsay and improper impeachment objections, Appellant responded, "[I]t's not the answer, [it's] the questions that [the investigator] posed to her. I mean, it's not what [Complainant] told her, [it's] the questions asked that planted this in a five-year-old's head." When the trial court asked Appellant

5

whether he wanted to impeach Complainant, Appellant responded, "Well, it's the defense's theory that this is where the idea came from."

After the trial court sustained the State's objections, Appellant said he felt compelled to call Complainant to the stand. After the trial court verified Complainant was still available, the trial court responded, "Okay. If that's what you want to do." Defense counsel said he would confer with Appellant. After conferring with Appellant, defense counsel said he did not want to call Complainant.

The State responds that Appellant never objected at trial based upon any constitutional violations and, therefore, failed to preserve error as to these complaints. We agree. Appellant directs us to his trial court arguments set out above, but nowhere in those arguments does Appellant suggest a constitutional complaint, and a constitutional complaint is not apparent from the context. Tex. R. App. P. 33.1(a)(1)(A). Appellant's argument was that the CPS investigator's testimony was relevant to possibly explain the basis for Complainant's allegations. Appellant's argument was not that the preclusion of her testimony prevented him from presenting a meaningful defense. A defendant's constitutional right to a meaningful opportunity to present a complete defense is rooted in the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process and Confrontation Clauses, and these rights are subject to procedural default. *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009). We overrule this portion of Appellant's point.

Interwoven within Appellant's constitutional arguments are his contentions that the excluded testimony was relevant and that its probative value was not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. Relevance was effectively a predicate to his constitutional arguments on appeal that the excluded testimony prevented him from presenting a defense. *See Wiley v. State*, 74 S.W.3d 399, 405–06 (Tex. Crim. App.), *cert. denied*, 537 U.S. 949 (2002); *Potier v. State*, 68 S.W.3d 657, 659–62 (Tex. Crim. App. 2002). We are to construe briefs liberally. Tex. R. App. P. 38.1(f) ("[T]he statement of an issue or point will be treated as covering every subsidiary question that is fairly included."); *see* Tex. R. App. P. 38.9 (requiring courts to liberally construe briefs for substantial compliance with rules). Construing Appellant's brief liberally, we address whether the excluded evidence was relevant and whether, even if it was relevant, it could be properly excluded under rule 403.

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A trial court does not abuse its discretion if its decision is within "the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008). We will uphold the trial court's ruling if there is any basis to sustain

7

it, even if it is not the basis upon which the trial court relied. *Whitmire v. State*, 183 S.W.3d 522, 529 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Appellant asserts the CPS investigator screened all the children for abuse using anatomically correct dolls. Our review of the CPS investigator's excluded testimony does not support this. The CPS investigator stated she asked Complainant to identify various body parts, but her testimony does not show she used anatomically correct dolls to help Complainant when doing so. Nothing in the CPS investigator's excluded testimony contributed to the argument that exposure to anatomically correct dolls gave Complainant the idea of accusing Appellant of sexually abusing her. More broadly, nothing in the CPS investigator's excluded testimony or in Complainant's testimony showed any link between the CPS investigator's screening of Complainant on August 9, 2011, and Complainant's subsequent outcry. Without something more linking the screening to the outcry, the trial court was within its discretion to conclude the CPS investigator's testimony was not relevant or, even assuming it was relevant, the speculative nature of its relevance was substantially outweighed by a confusion of the issues. Tex. R. Evid. 401, 403. The trial court's ruling lies within the zone of reasonable disagreement and does not, therefore, constitute an abuse of discretion. *Whitmire*, 183 S.W.3d at 528–29.

Even assuming error, the State argues any error would be harmless. Using the standard for constitutional error, the State argues that beyond a reasonable doubt any error did not contribute to the conviction or punishment.

Tex. R. App. P. 44.2(a). Because we previously held Appellant did not preserve any constitutional complaints, any harm analysis would be under rule 44.2(b), which applies to nonconstitutional errors. *Id.* 44.2(b). Under rule 44.2(b), any error that does not affect a substantial right must be disregarded. *Id.* A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *cf. Johnson v. State*, 72 S.W.3d 346, 348 (Tex. Crim. App. 2002) (articulating different standard under rule 44.2(b) in the context of whether a failure to obtain a written jury waiver is harmful). Even assuming the trial court erred in excluding the CPS investigator's testimony, for the reasons set out below, we agree with the State that any error would be harmless.

As for the anatomically correct dolls, our review shows they were used by the forensic interviewer after Complainant's outcry, during Complainant's testimony at trial, and possibly by the prosecutor in preparation for trial. Through cross-examination of Complainant, Appellant had already suggested that her testimony was not credible because she had been exposed to anatomically correct dolls. As noted earlier, the excluded testimony did not suggest the use of

any anatomically correct dolls.  The excluded testimony would not have helped Appellant further develop that argument.

Furthermore, the excluded testimony addressed the touching of private parts or the seeing of someone else's private parts, all of which Complainant denied.  The excluded testimony does not suggest private-part-to-private-part contact, which is what the alleged offenses were.  Similarly, nothing in the excluded testimony suggested the CPS investigator was encouraging Complainant to target Appellant.

Appellant also asked the forensic interviewer whether Complainant was influenced by having previously seen pornography.  The forensic examiner said it was not normal for a five-year-old to know about sex but added that sex was something a child could learn from seeing photographs, videos, or movies.  The forensic interviewer said Complainant talked about seeing a nasty picture on Appellant's phone and described it as being the same thing Appellant did to her. Appellant argued that Complainant came up with the idea of abuse from the pornography she had previously seen.  The excluded testimony indicated that Complainant, only a little over a week before the offenses, denied having seen any movies, books, or pictures of people without any clothes.  Once again, the excluded testimony would not have helped Appellant.

Although we have not found any error, we hold that to the extent there was any, it did not have a substantial and injurious effect or influence in determining the jury's verdict.  *See Solomon*, 49 S.W.3d at 365; *King*, 953 S.W.2d at 271.

We overrule Appellant's sole point.

## Clerical Errors in Judgments

The separate judgments for counts one and two recite that Appellant was found guilty of "aggravated sexual assault of a child under 14 years of age by threats and placing in fear with affirmative finding on special issue – child victim under the age of 6 years." The language "by threats and by placing in fear" is not supported by either the indictment or by the jury's verdicts on the two counts.

Appellate courts have the authority to reform incorrect judgments to make the record speak the truth when they have the necessary data and information to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). When a judgment improperly reflects the findings of the jury, the proper remedy is to reform the judgment. *Id.* Appellate courts have the power to reform whatever the trial court could have corrected by a judgment nunc pro tunc where the information necessary to correct the judgment appears in the record. *Id.* The authority of an appellate court to reform incorrect judgments depends neither on the request of any party nor on whether a party objected in the trial court. *Id.* at 529–30. Appellate courts may act sua sponte and may have the duty to act to reform judgments to correct improper recitations or omissions. *See id.* at 530. Accordingly, we delete the language "by threats and by placing in fear" from both judgments.

## Conclusion

Having overruled Appellant's sole point and having corrected the clerical errors in the judgments, we affirm the judgments as corrected.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 2, 2015