Affirmed and Memorandum Opinion filed December 9, 2008








Affirmed and Memorandum Opinion filed December 9, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00076-CR

____________

 

IVAN HERNANDEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 184th
District Court

Harris County, Texas

Trial Court Cause No. 1109748

 



 

M E M O R A N D U M   O P I N I O N








Appellant Ivan Hernandez was found guilty by a jury of the
felony offense of family-violence assault, second offender.  Based on an
agreement reached by appellant and the State, the trial court sentenced
appellant to two years= confinement in the Institutional Division
of the Texas Department of Criminal Justice.  On appeal, appellant contends
that the trial court erred by allowing the complainant and a police officer to
testify to similar bad acts, and by failing to instruct the jury to disregard
the prosecutor=s argument after sustaining appellant=s objection to the
prosecutor=s reference to Abattered wife
syndrome@ during closing
argument.  Appellant also contends the evidence of bodily injury is factually
insufficient to support his conviction.  We affirm.

Factual
Background

On March 26, 2007, appellant and his wife, Clarissa
Gonzales, were in the drive-through lane at a Taco Bell restaurant with their
three-year-old son.  It was between 4:00 and 5:00 p.m., and Gonzales had just
picked up appellant from another restaurant where he had been drinking.  The
two began to argue and, while at the restaurant, appellant assaulted Gonzales
by striking her with his hand, grabbing her by the neck, twisting her arm, and
throwing her to the ground.  Several people witnessed the assault.

At trial, Cameron Irving, the drive-through cashier at the
Taco Bell, testified that appellant was talking over Gonzales as she tried to
place their order at the speaker, and because Irving could not hear her, he
asked Gonzales and appellant to pull up to the window to place their order. 
When they drove up, Irving saw appellant reach over and Aconnect with a
hit,@ meaning that
appellant struck Gonzales.  Irving testified that he saw Gonzales=s head move Alike she got hit.@  Appellant then
turned to Irving and yelled, Awhat the fC you want to do?@  Appellant got
out of the car, slammed the door, and went inside the Taco Bell.  Irving
testified that appellant looked very angry, and because he felt that appellant=s anger was
directed at him, he decided to leave the restaurant.

As Irving retreated through the back door, Hywatha
Goodwill, another Taco Bell employee, saw appellant enter the restaurant and
look behind the counter.  Goodwill testified that appellant then left the
restaurant and returned to his car, where he grabbed Gonzales, pulled her hair,
put his hands behind her neck, twisted her arm, and tried to slam her to the
ground.  She also testified that Gonzales was crying.  Goodwill did not
intervene, but went back to work and did not see anything else.








Patrick Adeseye testified that he arrived at the Taco Bell
and saw the altercation between appellant and Gonzales.  As he walked into the
Taco Bell, he saw Gonzales sitting in the driver=s side of the car
as appellant was screaming and angrily striking the car with his fist.  Adeseye
then went inside the restaurant to ask if anyone had called the police.  When
he looked back outside, he saw that appellant had gained access to the car and
had his hands on Gonzales=s neck, forcibly removing her from the
car.  He testified that Gonzales was screaming as though she was Ascared for her
life@ as appellant
threw her to the ground.  A bystander attempted to intervene.  Just as an
altercation began between the intervenor and appellant, the police arrived and
broke it up.

Officer Virgil Thomas spoke to Gonzales, who appeared
emotionally distraught and excited.  Gonzales told Officer Thomas that
appellant was drunk.  She also told him that appellant had hurt her by hitting
her on the head and grabbing her neck.  Officer Thomas testified that he saw
marks on Gonzales=s arm and the side of her neck.  He also
testified that Gonzales told him she was afraid of appellant and needed time to
hide from him because Ahe don=t care about
protective orders or none of that stuff.@

However, when Gonzales testified at trial, she recanted her
allegations of abuse.  She testified that appellant went into the Taco Bell to
make sure they got the order right.  While he was inside, she began looking at
the phone numbers in his cell phone, and began to suspect that he was cheating
on her.  When he returned, they argued as he tried to take the cell phone away
from her.  She then threw the phone down and broke it, and he became upset
because his work contacts were on that phone.  Gonzales denied that appellant
ever touched her in a violent or harmful manner, or that appellant struck her,
pulled her hair, forced her out of the car, or grabbed her by the neck. 
Gonzales denied telling Officer Thomas that appellant caused her pain by
hitting her in the head; she said that she had told him she had a headache from
the incident.  She also denied saying that she was afraid of appellant. 
Gonzales testified that her visible injuries were work-related or caused by
holding her son.








Gonzales=s mother, Elisa Carey, testified that she
saw Gonzales later that day and she saw no indication that Gonzales had been
assaulted.  She testified that Gonzales told her that, while at a Taco Bell,
she and appellant Ahad a struggle@ over the cell
phone because Gonzales was looking at it to see whom appellant had been
calling.  However, Gonzales did not say that appellant had hit her.  

Analysis
of Appellant=s Issues

In his first and second issues, appellant contends that the
trial court erred by allowing Gonzales and Officer Thomas to testify to prior
bad acts by appellant.  In his third issue, appellant contends that the trial
court erred by refusing to instruct the jury to disregard the prosecutor=s reference to Abattered wife
syndrome@ during his
closing argument after sustaining appellant=s objection to the
comment.  In his fourth issue, appellant contends that the evidence of bodily
injury is factually insufficient to sustain his conviction.  We address each of
appellant=s arguments below.

I.        Testimony
of Similar Bad Acts by Appellant

In his first and second issues, appellant contends that the
trial court should not have allowed Gonzales and Officer Thomas to testify
concerning appellant=s similar bad acts because the evidence
was inadmissible evidence of conformity with character under Texas Rule of
Evidence 404(b). 

A.      The
Applicable Law








Under Rule 404(b), evidence of other crimes, wrongs or acts
is not admissible to prove a defendant acted in conformity with his bad
character.  See Tex. R. Evid. 404(b).  However, such evidence may be Aadmissible for
other purposes, such as proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident@ when it has
relevance beyond character conformity.  Id; Moses v. State, 105
S.W.3d 622, 626 (Tex. Crim. App. 2003).  The list of exceptions under Rule
404(b) is neither mutually exclusive nor collectively exhaustive.  Montgomery
v. State, 810 S.W.2d 372, 388 (Tex. Crim. App. 1990).  A trial court=s ruling on the
admissibility of such evidence is reviewed under an abuse-of-discretion
standard.  Id. at 391.  As long as the trial court=s ruling is within
the zone of reasonable disagreement, there is no abuse of discretion, and the
trial court=s ruling will be upheld.  Santellan v. State,
939 S.W.2d 155, 169 (Tex. Crim. App. 1997).  

B.      Gonzales=s Testimony

Appellant complains about the following exchange arising
from the State=s attempt to question Gonzales about her statement to
the police, which the State argued was relevant for the purpose of
impeachment:  

Q:      [State]  And, ma=am, you said in your statement that
he was swinging at you, correct?

A:      [Gonzales]  Correct.  

Q:      [State]  And it=s true also on that day that you
told the police in your statement that the defendant is violent, correct?

[Defense]  I would object, Your Honor, as to the relevance and also the
B B to not being admissible at this time.

[The Court]  Overruled.

[Defense]  Any [sic] extraneous.

[The Court]  Sorry I=m so hoarse.  Overruled.  Thank you.

Q:      [State]  And you also told the police that
he was a threat to you and your son that day, didn=t you?

A:      [Gonzales] 
Yes.








The State argues that these statements were offered for the
purpose of impeaching Gonzales=s testimony that appellant never touched
her in a Aviolent, harmful manner@ and Anever laid a hand
on [her].@  Before the State began questioning Gonzales on this
part of the statement, the trial court ruled that Gonzales=s prior statements
that appellant was violent and a threat to her and her son were relevant and
admissible as prior statements inconsistent with her testimony at trial.[1] 
Thus, the statements were not offered to prove that appellant was acting in
conformity with character, but instead were offered and admitted to show that
Gonzales changed her story between the day of the assault and the time of
trial.  In these circumstances, the trial court did not abuse its discretion by
determining that Gonzales=s prior statements were admissible for
purposes of impeachment under Rule 404(b).[2] 
See Whitmire v. State, 183 S.W.3d 522, 529 (Tex. App.CHouston [14th
Dist.] 2006, pet. ref=d) (holding that evidence offered and
admitted to impeach appellant=s testimony was not inadmissible under
Rule 404(b) because it was not offered to show conformity); Davis v. State,
No. 05-05-01694-CR, 2007 WL 122138, at *6B7 (Tex. App.CDallas Jan. 18,
2007, no pet.) (holding that prior inconsistent statement used to impeach
witness did not violate Rule 404(b)); see also Aranda v. State, 736
S.W.2d 702, 707 (Tex. Crim. App. 1987) (AThe rule of
admissibility of evidence of prior inconsistent statements should be liberally
construed and the trial judge should have discretion to receive any evidence
which gives promise of exposing a falsehood.@); Staley v.
State, 888 S.W.2d 45, 49 (Tex. App.CTyler 1994, no
pet.) (holding trial court did not abuse its discretion when it admitted
witnesses= video taped prior statements for purposes of
impeachment).

We overrule appellant=s first issue.

 








B.      Officer Thomas=s Testimony

Appellant also complains about the admission of Officer
Thomas=s statement that
Gonzales told him that appellant Adoes this when he
is drunk, him beating up on her in the past.@  The exchange
that led to this statement was as follows:

Q:      [State]  Start with whatever order you want,
but did she ever say anything about the defendant striking her or harming her?

A:      [Thomas]  Yes.

Q:      [State]  Tell me B B tell the jury what she said.

A:      [Thomas] 
Well, she had advised that B B  she was
explaining that he was drunk.  She said he does this when he is drunk, beating
up on her in the past.

Appellant
objected to the testimony as Aa possible prior offense that was stated
for the jury to hear.@  The trial court sustained the objection
and instructed the jury to Adisregard the last portion of the witness=[s] answer and
consider it for no purpose.@  Appellant requested a mistrial, which
the trial court denied.








Because the trial court sustained appellant=s objection to
Officer Thomas=s testimony as a prior bad act or extraneous offense,
we understand appellant=s complaint concerning this testimony to
be that the trial court erred in denying his request for a mistrial.[3] 
We review the trial court=s ruling on a motion for mistrial under
the abuse-of-discretion standard.  Webb v. State, 232 S.W.3d 109, 112
(Tex. Crim. App. 2007).  We view the evidence in the light most favorable to
the trial court=s ruling and uphold the trial court=s ruling if it was
within the zone of reasonable disagreement.  Id.

A mistrial is appropriate only for highly prejudicial and
incurable errors.  Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim.
App. 2003).  A witness=s inadvertent reference to an extraneous
offense is generally cured by a prompt instruction to disregard.  Rojas v.
State, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998).  If a trial court
instructs a jury to disregard, then we presume that the jury followed the trial
court=s instruction.  Rodriguez
v. State, No. 01-05-00589-CR, 2006 WL 2042513, at *2 (Tex. App.CHouston [1st
Dist.] July 20, 2006, no pet.) (mem. op., not designated for publication).  A
mistrial is required only when the improper question is clearly prejudicial to
the defendant and is of such character as to suggest the impossibility of
withdrawing the impression produced on the minds of the jurors.  Ladd v.
State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). 

Here, the testimony from Officer Thomas was elicited
inadvertently, and it was not emphasized by the State.  Moreover, the trial
court instructed the jury to disregard the testimony and to Aconsider it for no
purpose.@  We cannot
conclude that this brief statement was clearly prejudicial or so inflammatory
that it would be impossible for the jury to withdraw its impression from their
minds.  Moreover, appellant has offered no evidence to rebut the presumption
that the jury followed the trial court=s instruction to
disregard the testimony.  See Rodriguez, 2006 WL 2042513, at *2.  On
this record, the trial court did not abuse its discretion by refusing to grant
appellant=s motion for mistrial.  See id. at *1B2 (holding that
trial court did not abuse its discretion in refusing to grant mistrial after
instructing jury to disregard police officer=s testimony that
appellant=s wife told him that >this was not the
first time that something like this had happened, but it was the first time
that it happened in front of her children@); see also
Webb, 232 S.W.3d at 112; Simpson, 119 S.W.3d at 272, 274.








We overrule appellant=s second issue.

II.       The
Prosecutor=s Argument

In his third issue, appellant contends that after the trial
court sustained his objection to the prosecutor=s reference in
closing argument to Abattered wife syndrome,@ the trial court
erred by refusing to instruct the jury to disregard the statement.  The State
responds that the argument was not improper, and even if it was, the trial
court=s failure to instruct
the jury to disregard it was harmless error.

During the closing argument, the prosecutor was addressing
the defense=s position that Gonzales testified contrary to the
other witnesses.  He then argued the following:

. . . What is the motivation to lie?  Why not tell
the truth?

The very reasons
we talk about in voir dire.  Fear, love, concern about what the consequence
will be if he is found guilty of this offense.  Those are all clear bias of
motivation to not tell the truth.  And I submit to you that those are what are
in play here now.  Classic battered wife syndrome.  Classic I have been hit,
but I=m going to deny it
to save my man.

The
trial court sustained appellant=s objection to the argument, but denied
his motion to instruct the jury to disregard it.  

The law provides for, and presumes, a fair trial, free from
improper argument by the State.  Long v. State, 823 S.W.2d 259, 267
(Tex. Crim. App. 1991).  Proper jury argument includes four areas: (1)
summation of the evidence presented at trial; (2) reasonable deduction drawn
from that evidence; (3) answer to the opposing counsel=s argument; or (4)
a plea for law enforcement.  Jackson v. State, 17 S.W.3d 664, 673 (Tex.
Crim. App. 2000); LaHood v. State, 171 S.W.3d 613, 623 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d).  To constitute reversible error, the
argument must be manifestly improper or inject new, harmful facts into the
case.  Jackson, 17 S.W.3d at 673B74.  








In examining challenges to jury argument, we consider the
remark in the context in which it appears.  Gaddis v. State, 753 S.W.2d
396, 398 (Tex. Crim. App. 1988).  Attorneys may draw all reasonable, fair, and
legitimate inferences from the facts in evidence.  Id.  Matters of
common knowledge may be properly incorporated into final argument without
express support in the evidence.  See Carter v. State, 614 S.W.2d 821,
823 (Tex. Crim. App. 1981).

The prosecutor=s argument, taken
in context and in light of the evidence presented, is not manifestly improper. 
First, in the context in which the comment appears, it is evident that it was a
response to opposing counsel=s argument that Gonzales Awas the most
credible witness of all that you heard@ and had Ano reason, no
motive to be here lying to you to try and get Ivan out of jail.@  Further, the
argument incorporated a matter of common knowledge.  As courts have noted,
victims of domestic violence frequently recant their accusations or refuse to
cooperate with a prosecution.  See Moore v. State, 169 S.W.3d 467, 469
n.3 (Tex. App.CTexarkana 2005, pet. ref=d); Spencer v.
State, 162 S.W.3d 877, 878 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d).  The prosecutor=s argument was
also proper as a reasonable deduction from the evidence.  The evidence included
a police officer=s testimony that Gonzales told him at the
scene that appellant had assaulted herCan assault that
several witnesses described in their own testimony.  Despite this evidence,
however, Gonzales recanted her prior statements and contradicted the testimony
of the other witnesses at trial.  The prosecutor=s argument
addressed Gonzales=s reluctance to prosecute and possible
motive for recanting.  Accordingly, the evidence falls with the boundaries of
reasonable jury argument and the trial court did not err when it refused to
instruct the jury to disregard it.  








However, even assuming the argument was improper, any error
by the trial court in failing to instruct the jury to disregard it was
harmless.  Appellant argues that he was harmed by the introduction of evidence
outside the record and asserts that the Athe better practice
would have been to call a witness to testify about the battered woman=s syndrome, the
cycle of domestic violence, etc. so that the witness=[s] theories and
their application to Appellant=s case could have been tested by
cross-examination.@  

Generally, an improper comment during jury argument is
considered a non-constitutional error.  Martinez v. State, 17 S.W.3d
677, 692 (Tex. Crim. App. 2000).  Any non-constitutional error that does not
affect substantial rights must be disregarded.  Tex. R. App. P. 44.2(b); Martinez,
17 S.W.3d at 692; Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App.
1998).  To determine the harm of an improper jury argument, three factors are
balanced:  (1) the severity of the misconduct (prejudicial effect); (2)
curative measures; and (3) the certainty of conviction absent the misconduct.  Martinez,
17 S.W.3d at 692B93.

Although there was no curative instruction, the State=s comment is not
of such great magnitude to cause appellant severe prejudice.  The comment was
brief and made only once.  A reading of the record indicates that the State was
responding to the defense=s argument that Gonzales was the most
credible witness and should be believed over all the other witnesses, and
nothing in the record suggests that the prosecutor did not in good faith make a
reasonable deduction from the evidence.  Further, there is strong evidence to
support appellant=s conviction.  Three eyewitnesses
testified at trial that they saw appellant assault Gonzales.  Substantial
evidence was presented that appellant hit Gonzales, pulled her hair, twisted
her arm, grabbed her by the neck, and threw her to the ground.  Accordingly, we
hold that even if the trial court=s refusal to give
the jury a curative instruction was erroneous, it was not harmful.  See id.;
see also Scott v. State, No. 02-04-00139-CR, 2007 WL 2460354, at *5B6 (Tex. App.CFort Worth Aug.
31, 2007, pet. ref=d) (mem. op. on remand, not designated for
publication) (holding that argument injecting new facts into case was harmless
even though no curative instruction was given).

 








III.      The
Factual Sufficiency of the Evidence

In his fourth issue, appellant contends the evidence is
factually insufficient to sustain a conviction because the State failed to
demonstrate bodily injury. 

A.      Standard of
Review and Applicable Law

In a factual-sufficiency review, we review all of the
evidence in a neutral light, favoring neither party.  Garza v. State,
213 S.W.3d 338, 344 (Tex. Crim. App. 2007); Watson v. State, 204 S.W.3d
404, 414B15 (Tex. Crim.
App. 2006).  We ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the jury=s verdict seems
clearly wrong and manifestly unjust, or whether, considering conflicting
evidence, the jury=s verdict is against the great weight and
preponderance of the evidence.  Watson, 204 S.W.3d at 414B15; Johnson v.
State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  While we may disagree with
the jury=s conclusions, we
must exercise appropriate deference to avoid substituting our judgment for that
of the jury, particularly in matters of credibility.  Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005). 

The jury found appellant guilty of the felony offense of
family-violence assault, as a repeat offender.  A person commits the offense of
assault if the actor intentionally, knowingly, or recklessly causes bodily
injury to another, including the person=s spouse.  Tex.
Penal Code Ann. ' 22.01(a)(1) (Vernon Supp. 2007).  ABodily injury@ is defined as Aphysical pain,
illness, or any impairment of physical condition.@  Id. ' 1.07(a)(8)
(Vernon Supp. 2007).  This definition is purposefully broad and encompasses
even relatively minor physical contact so long as that contact constitutes more
than mere offensive touching.  Lane v. State, 763 S.W.2d 785, 786 (Tex.
Crim. App. 1989); Salley v. State, 25 S.W.3d 878, 881 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).

 

 








B.      Application
of Law to Facts

In support of his factual-sufficiency challenge, appellant
points to Gonzales=s testimony that (1) she gets Aa lot of bruises
and marks and scratches@ from her job and that her injuries were
caused by work, (2) the redness on her arm was caused by her son=s moving around as
she held him, and (3) her headache that day was not the result of appellant
assaulting her, but instead was caused by the incident of fighting in public
with appellant, who was drunk, over whether he was cheating.  Appellant also
points to the testimony of Gonzales=s mother, Elisa
Carey, who testified that she saw Gonzales that day and saw no evidence that
she had been assaulted. 

Conversely, the State contends that the evidence is
factually sufficient to prove bodily injury.  The State asserts that it was the
jury=s task at trial to
review the credibility of all the witnesses and to determine the weight to be
given their testimony.  By rendering a guilty verdict, the jury believed the
eyewitnesses= and officer=s version of
events over Gonzales=s testimony that her injuries were
work-related or caused by holding her son.  Further, the State contends that
the fact that Gonzales recanted her allegations of assault does not greatly
outweigh the evidence supporting the verdict.  The State concludes that the
evidence supporting the verdict is no so weak to as to undermine confidence in
the jury=s determination,
nor was there any contrary evidence so strong that the standard of proof beyond
a reasonable doubt could not have been met.  








Viewing all the evidence in a neutral light, we conclude
that the evidence is factually sufficient to prove that appellant caused bodily
injury to Gonzales.  Cameron Irving saw appellant Aconnect with a hit@ to Gonzales
before appellant Ablew up@ and cursed at
him.  Hywatha Goodwill saw appellant grab Gonzales with his hands around her
neck before grabbing her arm and twisting it behind her back as though he were
trying to slam her to the ground.  She also saw appellant pull Gonzales=s hair.  Patrick
Adeseye saw appellant grab Gonzales=s neck and throw
her to the ground after forcibly removing her from the vehicle.  Officer Thomas
spoke with Gonzales shortly after the incident, and she told him that she had
pain in her head from being hit in the head by appellant.  Gonzales also told
Officer Thomas that appellant had grabbed her around the neck, and she had
visible injuries, including marks on her arm and on the side of her neck.  At
trial, however, Gonzales denied that any assault occurred, and stated that the
injuries the officer saw were either work-related or caused by holding her
son.  She also stated that the pain in her head was a headache caused by the
incident and not from being hit by appellant.  Elisa Carey, Gonzales=s mother,
testified that she saw no signs of an assault on Gonzales when she saw her
later that day.

Thus, the jury was presented with the testimony of three
eyewitnesses who testified that appellant assaulted Gonzales, and the testimony
of an officer who testified that Gonzales told him that appellant hit her in
the head causing her pain, and grabbed her neck.  The officer also saw visible
injuries on Gonzales.  The jury was also presented with Gonzales=s testimony
recanting her earlier statements to the officer and wholly denying that
appellant assaulted her, as well as her mother=s testimony that
she saw no signs of assault on Gonzales.  Here, the jury chose to believe the
three eyewitnesses and the officer over Gonzales and her mother.  We are
mindful that we must defer to the jury=s credibility
determinations to avoid substituting our judgment for theirs.  See Drichas,
175 S.W.3d at 799; Watson, 204 S.W.3d at 414.  The jury=s decision is not
manifestly unjust merely because it resolved conflicting views of the evidence
in favor of the State.  See Cain v. State, 958 S.W.2d 404, 410 (Tex.
Crim. App. 1997).  Accordingly, we hold that the evidence is factually
sufficient to prove that appellant caused bodily injury to Gonzales, his
spouse.  

We therefore overrule appellant=s fourth issue.

 

 

 








Conclusion

We overrule appellant=s issues and
affirm the trial court=s judgment.

 

 

 

 

/s/      Jeff Brown

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed December 9, 2008.

Panel consists of
Chief Justice Hedges and Justices Guzman and Brown.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  The trial court instructed the State concerning the
use of the prior statements as follows:

 

Meaning
that when she says he is violent, that=s
an inconsistent statement with what she said on the stand, that he was not
violent that day.  You may use it in that context.  You have to be careful. 
Because to that extent, I think this is probative.  But at some point it
becomes so prejudicial that that outweighs the probative value.  So, tread
lightly.





[2]  Appellant also appears to suggest that the trial court further erred in
failing to grant a motion for a mistrial. 
However, appellant did not move for a mistrial after his objections to Gonzales=s testimony were overruled; therefore, he did not
preserve error on this issue.  See Tex. R. App. P. 33.1(a).  We also
note that appellant did not request a limiting instruction, and he did not
object that the testimony=s probative value would be substantially outweighed by
the danger of unfair prejudice under Texas Rule of Evidence 403.





[3]  The only cases appellant cites in support of his first two issues are Bauder
v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996), overruled on other
grounds, Ex parte Lewis, 219 S.W.3d 335 (Tex. Crim. App. 2007) (AOnly when it is apparent that an
objectionable event at trial is so emotionally inflammatory that curative
instructions are not likely to prevent the jury being unfairly prejudiced
against the defendant may a motion for mistrial be granted.@), and Rodriguez v. State,
No. 01-05-00589-CR, 2006 WL 2042513, at *2 (Tex. App.CHouston [1st Dist.] July 20, 2006,
no pet.) (mem. op., not designated for publication) (evaluating whether trial
court abused its discretion in refusing motion for mistrial after extraneous
offense testimony was admitted and trial court instructed jury to disregard it).  In his one-paragraph argument, appellant contends that A[t]his is one of those cases in
which the event is so inflammatory that it could not have been cured by an
instruction to disregard@ because it informed the jury that AAppellant=s default setting was wife beater.@  However, appellant does not refer to or apply the cited cases in his
argument under these issues.