**Affirmed and Memorandum Opinion filed March 17, 2015.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-13-00678-CR

**GLYNN CHASE WASHINGTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 12-DCR-059441A**

## M E M O R A N D U M   O P I N I O N

Appellant Glynn Chase Washington was convicted by a jury of aggravated sexual assault of a child.[1]  The trial court sentenced him to 35 years' confinement. In this appeal, appellant challenges: (1) in two related issues, the trial court's denial of his motion to suppress statements provided during an interview with police; (2)

---

[1] *See* Tex. Penal Code § 22.021 (West 2013).

the legal sufficiency of the evidence to support the sentence imposed; and (3) the trial court's admission of expert testimony by a Sexual Assault Nurse Examiner (SANE) witness. We conclude that: (1) the trial court did not abuse its discretion by admitting appellant's statements; (2) the evidence is legally sufficient to support that the offense occurred on or after September 1, 2007; and (3) appellant did not preserve his rule 702 appellate challenge to the expert's testimony as not assisting the jury in deciding the case. We therefore affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Appellant was indicted in two separate indictments with the felony offense of aggravated sexual assault of a child. In the only case at issue in this appeal, appellant was alleged to have, on or about November 1, 2007, intentionally and knowingly caused the contact and penetration of the mouth of Keith Everidge,[2] a child younger than six years of age, who was not the spouse of appellant, by the sexual organ of appellant.[3]

Appellant married Angie Quillens Washington, Keith's grandmother, in 1994, and she and appellant lived in New Orleans, Louisiana.[4] At the time of Hurricane Katrina in 2005, appellant and Quillens were separated. After Katrina hit, Quillens moved to Richmond, Fort Bend County, Texas. Sometime near "the end of 2007," appellant moved to Texas and began renting a room from Quillens. Quillens frequently babysat two of her grandchildren, Keith and his older sister, when their mother—Quillens' daughter—was at work. Keith's birthdate is July

---

[2] This is the same pseudonym used by the trial court.

[3] The second indictment involved contact and penetration of the alleged victim's anus. However, after trial, the jury remained deadlocked, and the trial court granted appellant a mistrial on this indictment.

[4] The record reflects that Keith's grandmother and appellant divorced prior to the trial. For ease of reference, we will refer to her by her maiden name "Quillens."

2

28, 2003.

On Sunday, December 11, 2011, when Keith was eight years old, he made an outcry to his mother. Keith began the conversation by asking his mother whether God "would punish a four-year-old kid if he did bad things with a grown person?" Keith stated that about three or four times when he and appellant were alone in appellant's bedroom, appellant put his "private" in Keith's mouth. At the time, Keith was four years old and attending pre-K at Mission Bend Elementary. At trial, Keith also testified he could have been five years old and attending Barbara Jordan Elementary at the time of the abuse. The day after Keith's outcry, his mother left work early, picked Keith up from school, and called police when they got home.

Detective Novosad with the Fort Bend County Sheriff's Office was assigned the case and scheduled a forensic interview for Keith. This forensic interview, which Novosad observed, took place on December 13, 2011. Novosad then interviewed Keith's mother and found her story to be consistent. Although a SANE examination was scheduled, Keith's mother did not go through with it.

On December 14, 2011, Novosad and Detective Cox visited appellant at Quillens' home. Novosad informed appellant that accusations had been made against him and requested that appellant go to the Sheriff's Office for an interview. Novosad informed appellant that there was no warrant for his arrest. Appellant, who did not have transportation, rode with the officers in an unmarked vehicle. Appellant was not handcuffed and rode in the front passenger seat.

Once at the station, Novosad offered and brought appellant water. Novosad also brought appellant a hamburger and French fries. The interview took place in an unlocked room. After Novosad explained to appellant that he was there voluntarily and could stop the interview and leave at any time, appellant gave an

3

audio- and videotaped statement. Appellant never asked police to stop the conversation. Appellant's statement was generally consistent with Keith's; however, according to appellant, Keith was the one who "came onto" appellant. Several times during the interview, Novosad encouraged appellant to tell the truth so that Novosad could make a recommendation to the prosecutor as to appellant's credibility and cooperativeness. Novosad mentioned the possibility of probation to appellant, but further indicated that he could not say what appellant's punishment would be and that the "DA or the judge or the jury [would] make the recommendation as to what the ultimate disposition of the case is."

After the interview was completed, two other officers drove appellant home. Police kept appellant under surveillance until a warrant for appellant's arrest was issued and executed.

Appellant filed a motion to suppress his recorded statements. The trial court conducted a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964). Novosad testified for the State; appellant did not testify. The trial court overruled appellant's motion and admitted the statements. The trial court issued findings of fact and conclusions of law. The trial court concluded that:

appellant was not in custody when he made the statements;

appellant had no Fifth Amendment right to an attorney during the interview;

article 38.22 of the Texas Code of Criminal Procedure did not apply;

appellant's statements were voluntarily made;

there was no police coercion in obtaining appellant's statements; and

appellant's statements were the product of his essentially free and unconstrained choice.

At trial, the State presented the following witnesses: Keith's mother; Officer Robins with the Fort Bend County Sheriff's Office, who initially responded to the

4

call from Keith's mother; Novosad; Quillens; a registered nurse certified as a pediatric SANE named Jamie Farrell; and Keith. Appellant rested without presenting any witnesses.

The jury found appellant guilty of aggravated sexual assault of a child, and the trial court assessed punishment at 35 years' confinement. Appellant timely appealed.

## II. ANALYSIS

### A. Appellant's recorded statements

In his first two issues, appellant challenges the trial court's denial of his motion to suppress his recorded statements provided to police. He argues first that Novosad made a mistake of law in informing appellant he could receive probation and this constituted coercion rendering appellant's statements involuntary. Second, he argues that the circumstances of appellant's interview at the Sheriff's Office amounted to a custodial interrogation, entitling appellant to the safeguards of article 38.22 and *Miranda v. Arizona*, 384 U.S. 436 (1966). We disagree on both counts.

### 1. Standards of review and applicable law

#### a. Motion to suppress

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005). We must view the evidence in the light most favorable to the ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). At a suppression hearing, the trial judge is the sole trier of fact and assesses the witnesses' credibility and the weight to give witnesses' testimony. *Id.* at 24–25. When, as here, the trial court makes explicit fact findings, we determine whether the evidence, when viewed in

the light most favorable to the ruling, supports those fact findings. *State v. Kelly,* 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We then review the trial court's legal rulings de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* We uphold the ruling if it is supported by the record and correct under any theory of the law applicable to the case. *Armendariz v. State,* 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

In reviewing a trial court's suppression ruling, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later. *Rachal v. State,* 917 S.W.2d 799, 809 (Tex. Crim. App. 1996); *Turner v. State,* 252 S.W.3d 571, 577 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). However, as here, when the parties relitigate the suppression issue at trial,[5] we consider all evidence from both the pre-trial hearing and the trial in reviewing the trial court's determination. *Gutierrez v. State,* 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *Turner,* 252 S.W.3d at 577.

### b. Voluntariness

The statement of an accused may be used against him if it appears it was freely and voluntarily made without compulsion or persuasion. Tex. Code Crim. Proc. art. 38.21 (West 2013). When the voluntariness of a confession is challenged, the trial court must make an independent determination in the absence of the jury as to whether the statement was voluntarily made. *Id.* art. 38.22, § 6 (West 2013); *Alvarado v. State,* 912 S.W.2d 199, 211 (Tex. Crim. App. 1995) (citing *Jackson,* 378 U.S. at 380). At this hearing, the State has the burden of proving by a preponderance of the evidence that the statement was voluntary.

---

[5] The jury was instructed that it should not consider any statements made by the defendant unless it believed beyond a reasonable doubt that the statements were voluntarily made.

6

*Alvarado*, 912 S.W.2d at 211. After determining whether a statement was voluntarily given, the trial court is to provide findings of fact and conclusions of law as a basis for its determination. Tex. Code Crim. Proc. art. 38.22, § 6.

A confession is involuntary, within the meaning of the federal due process clause, only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker. *Alvarado*, 912 S.W.2d at 211. The ultimate test is whether the defendant's will was "overborne" by police coercion. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997); *Mason v. State*, 116 S.W.3d 248, 257 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). To make this determination, we examine the totality of the circumstances. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007). The inquiry into whether police statements overcame the will of the suspect requires a factual determination. *See Creager*, 952 S.W.2d at 856. Because this determination revolves around historical facts and witness credibility, we give the trial court almost total deference. *Whitmire v. State*, 183 S.W.3d 522, 528 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (citing *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000)). We do not disturb the ruling unless there is a clear abuse of discretion. *Alvarado*, 912 S.W.2d at 211.

### c. Custodial interrogation

*Miranda* warnings and article 38.22 requirements are mandatory only when there is a custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). The meaning of "custody" is the same for purposes of *Miranda* and article 38.22. *Id.* The defendant bears the initial burden to prove that a statement was the product of a custodial interrogation. *Id.* The State has no burden to show compliance with *Miranda* unless and until the record as a whole

7

"clearly establishes" that the defendant's statement was the product of a custodial interrogation. *Id.* (citing *Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005)).

A trial judge's ultimate "custody" determination presents a mixed question of fact and law. *Herrera*, 241 S.W.3d at 526. Therefore, "[i]n reviewing a trial court's ruling on a *Miranda*-violation claim, an appellate court conducts a bifurcated review: it affords almost total deference the trial judge's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor, and it reviews *de novo* the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor." *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). The objective determination of custody is made on an ad hoc basis, considering the totality of the circumstances. *Herrera*, 241 S.W.3d at 532.

Generally, a person is considered to be in custody for purposes of *Miranda* and article 38.22 when: (1) the person is formally arrested; or (2) the person's freedom of movement is restrained to the degree associated with a formal arrest. *Nguyen v. State*, 292 S.W.3d 671, 677 (Tex. Crim. App. 2009); *Sloan v. State*, 418 S.W.3d 884, 889 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Since appellant was not formally under arrest here, the question turns on whether a reasonable person would have felt that he was not at liberty to terminate the interview and leave. *See Nguyen*, 292 S.W.3d at 678; *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322, 325 (1994)).[6]

---

[6] The Court of Criminal Appeals has described at least four general situations that may constitute custody for purposes of *Miranda* and article 38.22: (1) the suspect is physically deprived of his freedom of action in any significant way, (2) a law enforcement officer tells the

(continued)

8

## 2. The trial court did not abuse its discretion in admitting appellant's statements.

First, we consider whether the State met its burden to prove by a preponderance of the evidence that appellant's statements were voluntary, based on the totality of the circumstances. Then, there being no dispute that police provided no *Miranda* warning here, we consider whether appellant met his burden to clearly establish his statements were the product of a custodial interrogation.

The trial court issued the following relevant fact findings:

on December 14, 2011, appellant agreed to speak with Novosad and accepted a ride to the Fort Bend County Sheriff's Office in Novosad's vehicle;

Novosad had an unmarked vehicle and appellant rode in the front passenger seat;

appellant was not placed in custody when he rode with Novosad to the Sheriff's Office;

appellant was not placed in custody prior to or during his time at the Sheriff's Office;

appellant was told he was not in custody;

at the Sheriff's Office, Novosad and Cox interviewed appellant;

appellant was not deprived of food or water by the officers during the time he spent at the Sheriff's Office; he was provided with food and water;

appellant provided background information and responded to questions regarding the sexual abuse allegations;

appellant admitted to sexually abusing Keith Everidge to the detectives;

---

suspect he is not free to leave, (3) law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted, and (4) there is probable cause to arrest the suspect and officers do not tell the suspect he is free to leave. *State v. Ortiz*, 382 S.W.3d 367, 376 (Tex. Crim. App. 2012) (citing *Dowthitt*, 931 S.W.2d at 255).

Novosad found appellant's admissions consistent with what the victim reported;

appellant stated that Keith would initiate all sexual contact and minimized his own role;

after his admissions, appellant was not placed under arrest;

after his admissions, appellant was not placed in custody and was instead returned to his home;

during the interview process, appellant was never handcuffed, threatened, or coerced;

neither Novasad nor Cox offered appellant anything to overcome his free will;

neither Novasad nor Cox promised appellant anything in exchange for his statement implicating himself in the sexual abuse of Keith;

neither Novasad nor Cox had the authority to make promises to appellant regarding the disposition of his case;

Novosad told appellant that Novosad was not the person who would determine the outcome of the case;

Novosad told appellant that Novosad was not the doctor and could not testify as to any medical records;

appellant was not denied any common courtesy during the interview process;

appellant appeared coherent and to understand what was happening during the interview process;

appellant appeared to be cooperative with the officers;

appellant appeared to be fully coherent and not under the influence of any substance;

appellant graduated from high school and had life experiences that rendered him capable of exercising his free will; and

appellant's statements to Novasad and Cox were noncustodial and were freely and voluntarily made without compulsion.

### a. Appellant's statements were voluntary.

With regard to voluntariness, appellant primarily emphasizes Novosad's statement to appellant that he "might" receive probation if he told the truth. Appellant argues that Novosad repeatedly conveyed this mistaken belief to appellant to pressure him and entice his confession, and that this amounted to a promise upon which he detrimentally relied.[7]

A statement is involuntary if circumstances show that the confession was induced by a promise of a benefit. *See Ramirez v. State*, 76 S.W.3d 121, 126–127 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). For a "promise" to render a confession involuntary, the promise must have been positive, made or sanctioned by someone in authority, and of such an influential nature that it would cause a defendant to speak untruthfully. *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004). General statements regarding how a confession can sometimes result in leniency do not render a confession involuntary. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993). Nor do general offers to help or expressions of opinion that it would be best for the suspect to tell the truth. *Dykes v. State*, 657 S.W.2d 796, 797 (Tex. Crim. App. 1983). Nor do any predictions about future events involving what might happen if the suspect does or does not cooperate. *Mason*, 116 S.W.3d at 260; *see Espinosa v. State*, 899 S.W.2d 359, 362–64 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd) (holding statement not

---

[7] In fact, the revised aggravated sexual assault statute under which appellant was prosecuted does not provide for community supervision or deferred adjudication where the victim is younger than age six. *See* Tex. Penal Code § 22.021(f)(1) (West 2013) (increasing minimum term of imprisonment to 25 years, effective for offenses committed on or after September 1, 2007); Tex. Code Crim. Proc. art. 42.12, §§ 3(e)(1), 5(d)(3)(B) (West 2013). The State points out that Novosad's statement could have been correct had the prosecutor decided to proceed with a different charge, such as indecency with a child by contact or exposure, where deferred adjudication is available as a potential punishment. *See* Tex. Penal Code § 21.11 (West 2013); Tex. Code Crim. Proc. art. 42.12, § 5(a) (West 2013).

rendered involuntary by the mere fact that officer told defendant: "Go ahead and tell us what happened. Everything will be better for you. You will get less time.").

At the most, Novosad provided appellant with an opinion or prediction about future potential leniency in the form of probation. However, the record also reflects Novosad repeatedly made clear to appellant that it was not Novosad, but rather the prosecutor, the judge, and the jury, who controlled how appellant's case would be handled and what punishment he might receive. Novasad further explained to appellant that the way Novosad could "go to bat" for appellant was to relay his level of truthfulness and cooperativeness to the prosecutor, which Novosad indicated he did. The circumstances also indicate that, despite any "promise" about probation, during the interview, appellant expressed that "it don't look good on [his] end" and that he was "going to jail" and was "F'd."

The trial court here heard the evidence, issued extensive factual findings, and concluded that appellant's confession was voluntary. We conclude that the evidence supports the trial court's factual findings. Because we give almost total deference to the trial court's rulings on fact issues regarding confessions that are supported by the record, we cannot conclude appellant's will was overborne by any so-called promise by Novosad. *See Mason*, 116 S.W.3d at 257. We cannot say that the trial court clearly abused its discretion in refusing to suppress appellant's statements based on involuntariness. *See Whitmire*, 183 S.W.3d at 528; *Alvarado*, 912 S.W.2d at 211–12.

We overrule appellant's first issue.

### b. Appellant was not in custody.

With regard to custody, appellant argues that what may have started out as a voluntary police encounter or interview "eventually turned unto a custodial

12

interrogation." Appellant maintains that he was a crippled man in his fifties who had difficulty ambulating, was placed in a small room, and was repeatedly questioned for an hour and a half. Although appellant acknowledges he was told he was free to leave at any time, he contends that the detectives blocked his means of egress and he had to rely on them for transportation home. Appellant also contends that at some point during the questioning, probable cause to arrest was established.[8]

Many of the factors emphasized by appellant on appeal[9]—placement in an interview room, repeated questioning regarding a possible offense, being brought in by police—arise in situations where police conduct an interview at the station. However, "stationhouse questioning does not, in and of itself, constitute custody." *Herrera*, 241 S.W.3d at 535 (quoting *Dowthitt*, 931 S.W.2d at 257). Appellant describes the interview room as small. However, in reviewing the recording of the interview, which is in the record, the interview room appears well lit with ample room for a table and chairs as well as the occupants. Further, Novosad explained that the door to exit the interview room was unlocked from the inside at all times. There is no evidence that appellant was ever handcuffed, physically restrained, or

---

[8] Manifestation of probable cause to arrest does not "automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Turner*, 252 S.W.3d at 577.

[9] During the suppression hearing, appellant's trial counsel emphasized his involuntariness argument while deemphasizing his argument based on *Miranda*:

> I watched the video, once again, and in doing so the coercive nature of the questioning sort of stood out in my mind. And as a result of that, I did file a Motion to Suppress this morning. And I think the State probably has a pretty decent argument. This was not custodial interrogation and that he was not under arrest, but some comments were made by Detective Novosad that, again, in watching it again last night, I feel perhaps find that the statement wasn't voluntary.

even hindered by his "crippled"ness; and the detectives offered, and appellant accepted, food and water.

Perhaps the most critical factor here, however, involves the repeated—undisputed—statements by Novosad and Cox to appellant during the interview that he was not under arrest, there was no warrant for his arrest, he was not in custody, and he was free to refuse to talk to the detectives and to leave at any time. *See Howes v. Fields*, —U.S.—, 132 S. Ct. 1181, 1193–94, 182 L. Ed. 2d 17 (2012) (police communication of non-custodial status was "most important" factor in determining that inmate taken from his cell to prison conference room for questioning about events occurring outside prison was not in custody for purposes of *Miranda*); *Sloan*, 418 S.W.3d at 889 (noting that *Howes* Court "found it especially important that the inmate was told he was free to end the questioning and return to his cell").[10] And prior to going to the station, after Novosad knocked on Quillens' door, Novosad informed appellant that he was under investigation for an offense but police did not have a warrant for his arrest, and asked whether he would be willing to answer some questions. Appellant voluntarily consented to accompany the detectives to the station. We conclude that this evidence further evinces "the consensual and nonthreatening nature of the events." *See Turner*, 252 S.W.3d at 582 (describing as "critical" "the consensual and nonthreatening nature of the events beginning with appellant's stroll from the porch to greet the officers" and "consenting to go with the officers").

The trial court here heard the evidence, issued extensive factual findings, and concluded that appellant was not in custody when he made his statements. We

---

[10] While both *Howes* and *Sloan* involved already incarcerated inmates, the "traditional 'custody' analytical framework" applies when questioning involves an offense unrelated to the inmate's incarceration. *See Herrera*, 241 S.W.3d at 532.

14

conclude that the evidence supports the trial court's factual findings. Applying the appropriate bifurcated review, *see Alford*, 358 S.W.3d at 652, based on these facts and the absence of any other evidence clearly establishing that a reasonable person would have felt he was under restraint to the degree associated with an arrest, *see Turner*, 252 S.W.3d at 577, or was not at liberty to terminate the interview and leave, *Nguyen*, 292 S.W.3d at 678, we conclude that appellant's recorded statements were not the product of a custodial interrogation. *See Sloan*, 418 S.W.3d at 890. Therefore, the trial court did not abuse its discretion in refusing to suppress appellant's statements.

We overrule appellant's second issue.

## B. The evidence is legally sufficient to support that the offense occurred on or after September 1, 2007.

Next, in his third issue, appellant argues the evidence is legally insufficient to establish that the allegations took place on or after September 1, 2007. In other words, although appellant does not challenge the legal sufficiency that the allegations took place at all, he contends "[i]t is just as likely" the time of year could have been prior to September 1, 2007, such that the punishment range available under the prior version of section 22.021 was 5 to 99 years' confinement, or a sentence of community supervision.[11]

Both sides agree that the *Jackson v. Virginia*, 443 U.S. 307 (1979), legal sufficiency standard applies. When determining whether evidence is legally sufficient to support the verdict, we view all of the evidence in the light most

---

[11] Act of May 26, 1987, 70th Leg., R.S., ch. 573, § 1, 1987 Tex. Gen. Laws 2276 (under which offense is first-degree felony), *amended by* Jessica Lunsford Act, 80th Leg., R.S., ch. 593, § 1.18, 2007 Tex. Gen. Laws 1128 (under which minimum term of imprisonment for offense where victim is under age 6 is 25 years); Tex. Penal Code § 12.32 (West 2013); Tex. Penal Code § 22.021(f)(1); Tex. Code Crim. Proc. art. 42.12, §§ 3(e)(1), 5(d)(3)(B).

favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson*, 443 U.S. at 318–19). We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by re-evaluating weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the responsibility of the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997). The testimony of a child complainant, standing alone, is sufficient to support a conviction for sexual assault. *See* Tex. Code Crim. Proc. art. 38.07 (West 2013); *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990).

Keith's undisputed birthdate is July 28, 2003. The indictment was filed on May 20, 2013. The indictment and charge here both provide that the offense allegedly occurred on or about[12] November 1, 2007.[13] At the time trial began, July 16, 2013, Keith was nine years old.

---

[12] The jury was instructed that this "on or about" language allowed the State to prove a date other than the one alleged in the indictment as long as the date is prior to the indictment and within the statute of limitations—although, there is no statute of limitations for aggravated sexual assault of a child.

[13] There is no dispute on that date the revised statute applied and Keith had turned four years old.

At trial, Keith testified that the abuse may have happened when he was four years old and attending pre-K at Mission West Elementary. This testimony is consistent with his outcry to his mother (when Keith was approximately eight and a half years old) and with his statements during his forensic interview. Apparently, when his mother asked how Keith knew he was four at the time of the abuse, he indicated that he remembered he was in pre-K at Mission West Elementary, which he attended only for his pre-K year. Keith also testified that he was four in 2008. Keith testified the abuse may have occurred when he was five years old and attending Barbara Jordan Elementary. Keith further indicated that the abuse happened three or four times total, not day after day, but with "just some days" in between.[14] Further, there was evidence from Keith's mother that appellant moved into Quillens' home sometime "at the end of 2007."

Despite Keith's testimony that the sexual abuse occurred at the earliest when he was four and already attending pre-K taught by Ms. Jones, appellant insists this is merely "a rough estimation," and there is equal or nearly equal circumstantial evidence that the offense date was prior to September 1, 2007. However, appellant points to no record evidence to support that the abuse instead happened in July or August 2007 or any other time prior to September 1, 2007.[15] Appellant's argument essentially amounts to an attack on the credibility of the State's evidence, *see* *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999), which implicates a time-frame for the events sometime "at the end of 2007" after appellant had moved

---

[14] Keith testified that on at least three occasions when he was alone with appellant on appellant's bed in his room, appellant took out "his private" or "what you go pee with" and Keith had to put appellant's "private," which "had hair on it," in his mouth.

[15] At trial, defense counsel instead requested language in the charge "giv[ing] the jury the ability to consider whether Mr. Everidge was, in fact, older than six when this occurred," which the trial court denied.

into Quillens' home; after the start of the 2007-2008 school year when Keith was attending pre-K at age four; and possibly stretching into the time when he was attending kindergarten at age five. But the factfinder is the sole judge of the credibility of the witnesses and strength of the evidence, and we must presume that the factfinder resolved any conflicts in favor of the prevailing party. *Bargas v. State*, 252 S.W.3d 876, 887 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Moreover, we keep in mind the wide latitude given to testimony by child victims of sexual abuse. *Newby v. State*, 252 S.W.3d 431, 436 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *see also Bargas*, 252 S.W.3d at 888 (victim's account of sexual abuse sufficient despite "unsophisticated terminology and rough time-frame of the events"); *Villalon*, 791 S.W.2d at 134 (we cannot expect a child victim to testify with same clarity and ability as mature, capable adults).

We conclude that when viewed in the light most favorable to the verdict, the jury as a rational factfinder could have determined that the essential elements of the offense, including as to when the abuse occurred, were met beyond a reasonable doubt. *See Bargas*, 252 S.W.3d at 888–89.

Because our conclusion supports application of the revised section 22.021, as effective September 1, 2007, we overrule appellant's third issue.

## C. Appellant did not preserve his objection that SANE expert testimony would not assist the jury.

Appellant argues in his fourth issue that the trial court erred in admitting the testimony by pediatric SANE Farrell—specifically, that admission of her testimony when no SANE examination took place violated the third prong of rule 702.

Texas Rule of Evidence 702, entitled "Testimony by Experts," governs the admission of expert testimony, and provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Tex. R. Evid. 702.[16]  A party may challenge expert testimony on at least three specific grounds.  First, a party may allege that the witness does not qualify as an expert because the witness lacks the requisite knowledge, skill, experience, training, or education in the subject matter of the expert's testimony.  *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006); *see* Tex. R. Evid. 702.  Second, a party may allege that the subject matter of the testimony is inappropriate because it is unreliable.  *Vela*, 209 S.W.3d at 131, 133–34; *see* Tex. R. Evid. 705(c); *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).  Third, as here, a party may allege that the testimony will not assist the factfinder in deciding the case.  *Vela*, 209 S.W.3d at 131; *see* Tex. Rs. Evid. 401, 402.[17]  In addition to challenging an expert on these three grounds, a criminal defendant has a procedural right to voir dire an expert under rule 705(b) of the Texas Rules of Evidence.  Under this rule, a trial court must grant a party's "request . . . to conduct a *voir dire* examination directed to the underlying facts or data upon which the opinion is based," and this examination is conducted outside the presence of the jury.  Tex. R. Evid. 705(b).

---

[16]  Restyled language in the Texas Rules of Evidence is effective as of April 1, 2015.  We refer in this opinion to the language of the Texas Rules of Evidence in effect at the time of trial.

[17]  The three requirements for expert testimony raise distinct questions and issues, and an objection based on one of these requirements does not preserve error as to another.  *Turner*, 252 S.W.3d at 584 n.5.  Similarly, if a party objects to expert testimony without identifying one or more of these issues, no error is preserved for our review.  *Gregory v. State*, 56 S.W.3d 164, 182 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd) (holding that "[o]bjections based simply on Rule 702 and *Daubert* alone" are general objections that do not preserve error).

To preserve error for review, an appellant must make a timely and specific objection. *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008). "Moreover, an objection must be made each time inadmissible evidence is offered unless the complaining party obtains a running objection or obtains a ruling on his complaint in a hearing outside the presence of the jury." *Id.* A party must satisfy its burden to do "everything necessary to bring to the judge's attention the evidence rule [or statute] in question and its precise and proper application to the evidence in question." *Martinez v. State*, 91 S.W.3d 331, 335–36 (Tex. Crim. App. 2002) (alteration in original). And a complaint on appeal must comport with the objection made at trial. *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014).

On appeal, appellant challenges the admission of Farrell's testimony in toto because it discussed SANE examinations where no SANE examination of Keith took place and therefore was irrelevant and did not assist the factfinder. The State listed Farrell and identified her as a SANE within its notice of expert witnesses. However, although appellant filed a motion in limine, he did not challenge Farrell's testimony in that motion, and appellant also did not request a rule 705(b) voir dire examination of Farrell. Nor did he request a running objection to Farrell's testimony at trial.

Here, the record reflects two objections made by appellant's counsel during Farrell's testimony. First, counsel objected specifically to the admission of Farrell's CV as an exhibit on the basis of relevance, which objection the trial court overruled. However, at that point, Farrell already had provided five pages of testimony about her background and experience as a SANE without objection. Second, counsel objected specifically to the question, "What factors could cause injuries to the anus?" on the basis of relevance, which objection to "that question"

the trial court overruled. At that point, Farrell already had provided detailed testimony about how SANE examinations are conducted on children, including assessing injuries to a child's anus, without objection. Moreover, counsel made no additional objection as the State continued to question Farrell and she provided further testimony about SANE examinations, including published studies.

Under these circumstances, we cannot conclude that appellant's two isolated relevance objections to a specific document and to one particular question were sufficient to preserve an appellate complaint to the entire line of Farrell's testimony about SANE examinations.[18] *See Washington v. State*, 449 S.W.3d 555, 565–66 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

We overrule appellant's fourth issue.

### III. CONCLUSION

Accordingly, we affirm the trial court's judgment.

/s/    Marc W. Brown
Justice

Panel consists of Justices McCally, Brown, and Wise.

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[18] This court previously has declined to decide whether an objection based on "relevance" preserves for appeal the issue of whether expert testimony assists the factfinder. *See Shaw v. State*, 329 S.W.3d 645, 650 n.2 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). We also do not decide this issue here because even presuming that is the case, we conclude that appellant's objections are not otherwise sufficient to assail Farrell's testimony on the whole.